STATE of Utah, Plaintiff and Respondent,

v.

Clint RUPLE, Defendant and Appellant.

No. 17303.

Supreme Court of Utah.

May 26, 1981.

Cheryl A. Russell, Logan, for defendant and appellant.

David L. Wilkinson, Craig L. Barlow, Salt Lake City, for plaintiff and respondent.

HOWE, Justice:

The defendant, Clint Ruple, appeals his jury conviction of the crime of production of a controlled substance (marijuana) in violation of § 58–37–8(1)(a)(i), U.C.A.1953 as amended, for which he was sentenced to serve not more than five years in the Utah State Prison.

In the spring of 1980, the defendant was renting an apartment from Earl Johnson. When he failed to pay his rent, Johnson asked him to vacate. Johnson testified at the trial that he watched the defendant move his belongings out of the apartment and saw him carry out some plants. When Johnson went into the apartment to clean, some three days later, he found a storage room filled with growing plants. The room was partially lined with tinfoil and equipped with heat lamps. Suspecting that

the plants might be marijuana, Johnson called the police. Following an investigation, the defendant was arrested and charged.

After the prosecution had presented its case, counsel for the defendant asked for and received a recess in order to confer with his client. Approximately ten minutes later, the defendant and his attorney re-entered the courtroom and asked to speak with the judge in his chambers. In chambers, counsel stated that defendant wished to change his plea to guilty, but when asked by the judge if that were true, the defendant said, "No." The court then recessed for lunch. At the end of that recess, the judge again met with the defendant and his counsel in chambers. Counsel said that he would continue with the defense, but that he had advised the defendant to plead guilty. Counsel stated:

> I have no inclination to go forward with it. He's now indicated to me he wishes to change and plead guilty, but he's being railroaded into it. I'd like to protect myself on this thing to let the record show that it's his choice entirely, I'm not forcing him to plead guilty. I would continue the case, but I don't have testimony to present nor a viable closing argument in my opinion. The decision is yours.

Thereafter, the judge told the defendant that the trial would not be continued but that the defendant had three options:

> May I explain the things you can do, of course. We can't continue the trial, we have to go forward with it. We've started and the State has put on their evidence. You have certain options and it's up to you, no one else. You have to decide it. Whether you want to change your plea to guilty, whether you want to proceed with the trial with Mr. Low to represent you in whatever manner he feels he can, or you may proceed on your own with the trial.

The defendant chose to represent himself but to allow counsel to sit with him at the counsel table. Counsel did not participate in the remainder of the trial, however. The defendant called his mother as a witness, and after briefly questioning her and after cross-examination by the prosecution, he rested his case. Closing arguments were given by both the prosecution and the defendant personally. The jury returned its verdict of "guilty" after deliberating for 20 minutes.

Defendant contends that he was denied his right to counsel as guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States. The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense." He also relies on the Utah Constitution, Article I, Section 12 which states: "In criminal prosecutions the accused shall have the right to appear and defend in person and by counsel...."

■ It is a basic principle of our law that a defendant in a criminal case may defend himself without counsel. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). However, in that case the court added the following words of caution:

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. *Johnson v. Zerbst*, 304 U.S. [458], at 464–465 [58 S.Ct. 1019, at 1023, 82 L.Ed. 1461]. Cf. *Von Moltke v. Gillies*, 332 U.S. 708, 723–724 [68 S.Ct. 316, at 323, 92 L.Ed. 309] (plurality opinion of Black, J.). Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *Adams v. United States ex rel. McCann*, 317 U.S. [269], at 279, [63 S.Ct. 236, at 241, 87 L.Ed. 268].

422 U.S. at 835, 95 S.Ct. at 2541. We recognized and applied those principles in *State v. Dominguez*, Utah, 564 P.2d 768 (1977). We there observed that the trial judge had been meticulous in his questioning of the defendant, had gone to great lengths to explain the trial procedure and what would be expected of him at the trial, and apprised him of the dangers and disadvantages of proceeding without the aid of an attorney. We accordingly concluded that the defendant had competently, intelligently and voluntarily waived his right to counsel.

In the instant case, the record reveals that the trial judge gave the defendant the options of pleading guilty, proceeding with the trial with his attorney representing him, or proceeding pro se. After the defendant chose to represent himself, the trial judge briefly explained to him the procedure he would have to follow in the conduct of the balance of the trial, but unlike *Dominguez* he did not discuss with the defendant the dangers and disadvantages of self-representation. He did not advise the defendant that it is generally advisable to have a lawyer who is skilled and trained in the law, and he did not point out to the defendant any of the hazards he may encounter by acting pro se. *U. S. ex rel. Martinez v. Thomas*, 526 F.2d 750 (2nd Cir. 1975). The record reveals that the defendant here at the time of trial had not finished the twelfth grade of school and suffered from minimal brain disfunction as well as dyslexia. While the defendant had been in court before, mostly on juvenile charges, the record does not reveal that he had ever gone through a trial or had even witnessed a trial the likes of which he was about to conduct.

The record does not demonstrate that the defendant "knowingly and intelligently" made his choice to represent himself. The judgment below is reversed and the case is remanded for a new trial.

STEWART and OAKS, JJ., concur.

HALL, Justice (dissenting):

I interpret the facts of this case quite differently than does the majority opinion.

Defendant's sole contention on appeal is that he did not "voluntarily, knowingly and intelligently" choose to proceed *pro se.* He does not contend that his retained counsel *quit,* nor does he register any complaint against him for any reason whatsoever.

The episode giving rise to his contention occurred outside the presence of the jury and is reflected in the following excerpts from the record:

MR. LOW: I think for the record, Your Honor, I've talked to my client in light of the testimony produced and the fact that I do not feel that it's wise to put him on the stand at this time, nor his mother, because of the circumstances. I've explained to both my client and to his mother and I have advised him that rather than proceed with the trial and continue the expense of the litigation that it would be wise for him to enter a plea of guilty. I explained it to him not only now but an hour and a half ago. *His decision in the hall is to discharge me as counsel and continue his defense himself, and I'm willing to do that,* that's fine, and I want the record to reflect that that's my advice to him, to plead guilty, I will continue with the trial. I want the record to indicate though that I have no witnesses to call at this time, and I don't think it's in the best judgment to call any witnesses at this time, certainly not the defendant nor his mother, nor do I have a viable closing argument in view of the State versus Cox on the question of time. [Emphasis added.]

*I have no inclination to go forward with it. He's now indicated to me he wishes to change and plead guilty, but he's being railroaded into it. I'd like to protect myself on this thing to let the record* show that it's his choice entirely, I'm *not forcing him to plead guilty.* I would continue the case, but I don't have testimony to present nor a viable closing argument in my opinion. The decision is yours. [Emphasis added.]

THE COURT: May I explain the things you can do, of course. We can't

continue the trial, we have to go forward with it. We've started and the State has put on their evidence. You have certain options and it's up to you, no one else. You have to decide it. Whether you want to change your plea to guilty, whether you want to proceed with the trial with Mr. Low to represent you in whatever manner he feels he can, or you may proceed on your own with the trial.

In the event you elect to do that, I would have Mr. Low there at the counsel table, because I think it's highly prejudicial before a jury to see that he's left, just the fact that he would leave, would be at the counsel table available for questions—you know, that you want to ask him, you know, like if you want to do it yourself. There's no cross examination because the State's all through.

MR. RUPLE: Okay.

THE COURT: If you proceed yourself then you can call whoever you want and ask whatever questions you want.

MR. RUPLE: Right.

\* \* \* \* \* \*

THE COURT: Now what is it you'd like to do?

MR. RUPLE: Well, I'll go in there and represent myself.

THE COURT: Okay. Now do you want to give your own closing statement to the jury?

MR. RUPLE: Yeah.

THE COURT: *Okay. But Mr. Low will be there sitting by you and if you want to ask him any questions he'll be available for questions.*

MR. RUPLE: *Okay.* [Emphasis added.]

It is to be seen from the foregoing that counsel did not *quit*. On the contrary, defendant *discharged* him rather than follow his advice not to testify in his own behalf and not to call his mother as a witness.

Defendant then determined that he would plead guilty, but that he was "being railroaded into it." This attitude on the part of the defendant readily explains counsel's statement that "I have no inclination

to go forward with it" ("it" being a "railroaded" guilty plea), without making the record clear that he was not "forcing him to plead guilty," but was leaving the choice to him entirely.

The trial judge appropriately advised defendant of other options available to him. This prompted him not to change his plea to guilty. He asked for no continuance to obtain other counsel, nor did he request substitute counsel. Instead, he opted to take charge of his own defense with defense counsel standing by to assist upon request.

The record in this case belies defendant's contention that he acted other than voluntarily, knowingly and intelligently. This was not his first experience with the law. In fact, he had served a period of probation on an identical charge. Also, his record of slowness in school was of a nature that does not reflect the absence of intelligence.

Having seen fit to retain counsel initially, defendant was obviously aware of the benefits to be derived from representation by counsel. Conversely, he could not but have been aware of the hazards of going it alone. In the midst of trial that obviously is not going well for him, he concludes that his concept of trial strategy is superior to that of counsel and opts to present his own defense. This he had a constitutional right to do. Nevertheless, the court insisted that he do so only with defense counsel standing by to assist.

I deem the trial judge to have exercised sound discretion in permitting the trial to go forward, and with the precautions taken by the court, that the defendant received a fair trial and was not deprived of any constitutional protections.

I would affirm the conviction and judgment.

MAUGHAN, C. J., concurs.