**STATE of Utah, Plaintiff and Appellee,**

v.

**Perry McDONALD, Defendant and Appellant.**

**No. 940105–CA.**

Court of Appeals of Utah.

July 18, 1996.

---

Scott L. Wiggins, Salt Lake City, for Defendant and Appellant.

J. Frederic Voros, Jr., Salt Lake City, for Plaintiff and Appellee.

Before ORME, BILLINGS and WILKINS, JJ.

WILKINS, Judge:

Perry McDonald appeals from his conviction for aggravated robbery, a first degree felony, in violation of Utah Code Ann. §§ 76–6–302 and 76–3–203.1 (1990). We affirm.

## BACKGROUND

Approximately twenty minutes before midnight, on May 9, 1993, two armed men robbed the Arctic Circle restaurant in Clearfield, Utah, where three employees were working. The police arrested defendant and two other men in connection with the robbery.

Defendant was appointed counsel, Mr. William Albright. Defendant pleaded "not guilty" at his arraignment hearing and the following day appeared with Mr. Albright for a pretrial hearing before the trial court.

A couple of weeks later, defendant appeared with Mr. Albright for his jury trial. One of the other men charged with defendant also appeared with his counsel, because the two men were to be tried jointly before the same jury. After the jury was impanelled and as opening arguments were to begin, defendant requested to speak with the trial court. The trial court invited defendant, Mr. Albright, and the prosecutor into his chambers.

Defendant expressed to the trial court his concern that neither Mr. Albright nor he were prepared to go to trial. Defendant explained that Mr. Albright had never met with him to discuss trial strategy, and that as a result defendant felt unprepared for trial. The trial court quizzed Mr. Albright on his trial preparation, and after a brief discussion, became satisfied that Mr. Albright was prepared to proceed. Defendant also admitted Mr. Albright was prepared, but defendant complained that he felt unprepared for his own testimony. Defendant then asked the trial court whether he could question the witnesses himself. The trial court responded by asking defendant if he wanted to represent himself. Defendant said he did. The trial court asked defendant a variety of questions and concluded that defendant would represent himself, but Mr. Albright would attend the trial as standby counsel.

Defendant first asked that Mr. Albright proceed with his opening argument, then apparently changed his mind and presented his own opening argument. He also examined and cross-examined the witnesses on his own, without Mr. Albright's assistance, and made his own closing statement. The record indicates Mr. Albright was present throughout the trial, but does not indicate that he participated in any way during the trial. In addition, although Mr. Albright asked to be excused from the trial just before closing arguments to attend a preliminary hearing in another courtroom, the court denied his request by saying, "I think we need you here, Mr. Albright. The reason for that, there may come up some things in the course of the closing argument by the prosecution that Mr. McDonald may want some consultation on and I would like you available for that." Defendant presented his own closing argument. There is no indication in the record that he sought Mr. Albright's assistance.

The jury found defendant guilty of aggravated robbery, and he was sentenced to five years to life at the Utah State Prison and fined $10,000.

Defendant makes the following two arguments on appeal: First, he argues he did not validly waive his right to counsel because his waiver was not knowing, intelligent, and voluntary. Second, defendant argues his right to self-representation was violated because the trial court appointed Mr. Albright to be defendant's standby counsel despite the conflict defendant now sees stemming from his accusation at the time of trial that Mr. Albright was not adequately representing him.

## ANALYSIS

### I. Waiver of Right to Counsel

The Sixth Amendment to the United States Constitution guarantees an accused

the right to self-representation. *Faretta v. California*, 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975). Article I, section 12 of the Utah Constitution also guarantees this right, *State v. Bakalov*, 849 P.2d 629, 632 (Utah App.), *rev'd on other grounds per curiam*, 862 P.2d 1354 (Utah 1993), as does state statutory law, Utah Code Ann. § 77-1-6(1)(a) (1995). To force counsel on a defendant "can only lead [the defendant] to believe that the law contrives against him." *Faretta*, 422 U.S. at 834, 95 S.Ct. at 2540. In *Faretta*, the Supreme Court described the right to self-representation:

> The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law."

*Id.* at 834, 95 S.Ct. at 2540-41 (quoting *Illinois v. Allen*, 397 U.S. 337, 350-51, 90 S.Ct. 1057, 1064, 25 L.Ed.2d 353 (1970) (Brennan, J., concurring)).

However, the Sixth Amendment, the Utah Constitution, and state statutory law also guarantee an accused the right to be represented by counsel. *See* U.S. Const. amend. VI; Utah Const. art. I, § 12; Utah Code Ann. § 77-1-6(1)(a) (1995). The right to counsel has been well guarded by the courts as a fundamental constitutional right, and Supreme Court cases have expressed "that the help of a lawyer is essential to assure the defendant a fair trial." *Faretta*, 422 U.S. at 832-33, 95 S.Ct. at 2540.

■ When an accused invokes the right to self-representation, he or she necessarily waives the right to counsel. Consequently, to carefully guard the right to counsel without interfering with the right to self-representation, the Supreme Court established the rule that for a defendant to represent himself or herself, he or she "must 'knowingly and intelligently' forgo [the] benefits" associated with the right to counsel. *Id.* at 835, 95 S.Ct. at 2541; *see State v. Frampton*, 737 P.2d 183,

187 (Utah 1987) ("An accused's right to conduct his own defense must be respected and guarded by the courts in harmony with the right to assistance of counsel, also guaranteed by the [S]ixth [A]mendment.").

■ A court must honor a defendant's choice of self-representation unless the court finds that the waiver was not knowing, intelligent, *Bakalov*, 849 P.2d at 634, and voluntary, *Frampton*, 737 P.2d at 187.

"Intelligent" in this context means "only that the defendant has been provided with adequate information on which to make his or her self-representation choice. Because such a choice is seldom, if ever, a wise one, 'intelligent' does not carry that meaning here." *State v. Drobel*, 815 P.2d 724, 732 n. 11 (Utah App.), *cert. denied*, 836 P.2d 1383 (Utah 1991). "Knowing" refers to a defendant's competence to waive the right to counsel, similar to a defendant's competence to stand trial, *id.* at 731 n. 11, while "voluntary" means "free from official coercion, even if not free from the influence of a mental disorder," *id.* at 732 n. 11. In this case, defendant raises no argument challenging the "knowing" or "voluntary" nature of his waiver.

■ In determining whether an intelligent waiver has been made, a court does not consider the defendant's best interests. *See id.* at 733 n. 16. Instead, a court must adhere to the guide set forth by the Supreme Court in *Faretta*, on which we rely today:

> Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is° made with eyes open."

422 U.S. at 835, 95 S.Ct. at 2541 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)). "The ultimate test is not the trial court's express advice, but rather the defendant's understanding." *Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1065 (11th Cir.1986). Therefore, we examine whether defendant understood the dangers and disadvantages of

self-representation such that he was able to intelligently waive his right to counsel.

We recognize that we cannot base our decision solely on defendant's background. As the court in *Frampton* explained:

Although a defendant's background is relevant to his ability to waive his right to counsel, that background

is not relevant to show whether a sensible, literate, and intelligent defendant possesses the necessary information to make a meaningful decision as to waiver of counsel. The fact that a defendant is well educated, can read, or has been on trial previously is not dispositive as to whether he understood the relative advantages and disadvantages of self-representation in a particular situation.

In the absence of a colloquy, the record must somehow otherwise show that the defendant understood the seriousness of the charges and knew the possible maximum penalty. The record should also show that the defendant was aware of the existence of technical rules and that presenting a defense is not just a matter of telling one's story.

*Frampton*, 737 P.2d at 188 (quoting *City of Bellevue v. Acrey*, 103 Wash.2d 203, 691 P.2d 957, 962 (1984) (en banc) (citation omitted)) (footnote omitted). Instead, in making this determination, " 'we must consider the *total* circumstances of the individual case including background, experience and the conduct of the accused person.' " *Drobel*, 815 P.2d at 733 (quoting *United States v. Padilla*, 819 F.2d 952, 958 (10th Cir.1987) (quotations and citations omitted)) (emphasis added).

## A. Standard of Review

■ Because the determination that a defendant has intelligently waived his right to counsel "turns 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused,' " *id.* at 732 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)), the constitutionality of an accused's waiver of the right to counsel is a mixed question involving both fact and law. *See State v. Tenney*, 913 P.2d 750, 753 (Utah App.1996).

In *Drobel*, this court announced that a court's determination of whether a defendant has adequately waived the right to counsel is a finding of fact, and we adopted the clearly erroneous standard of review. *Drobel*, 815 P.2d at 734. We derived this standard from the Utah Supreme Court's treatment of the question of trial competency. *Id.* However, in subsequent cases, we acknowledged that this issue involves both findings of fact, usually reviewed under the clearly erroneous standard, and conclusions of law, usually reviewed for correction of error. *See Tenney*, 913 P.2d at 753; *Bakalov*, 849 P.2d at 634.

We are convinced the question of whether a defendant has adequately waived the right to counsel falls squarely within a third category of issues presented for review announced by the Utah Supreme Court in *State v. Pena*: "the application of law to fact or, stated more fully, the determination of whether a given set of facts comes within the reach of a given rule of law." *State v. Pena*, 869 P.2d 932, 936 (Utah 1994).

In *Pena*, the Utah Supreme Court recognized that "the articulated legal rule to be applied to a set of facts" may embody "a de facto grant of discretion" to the trial court in reaching a conclusion regarding the legal effect of a particular set of facts. *Id.* at 937. The court explained that standards of review are found on a "continuum of deference" rather than in separate neatly defined slots. *Id.* at 936. In explaining the various degrees of discretion appellate courts afford trial courts, the supreme court metaphorically described the standard of review appellate courts should apply in cases, such as this one, involving the application of a rule of law to a set of facts. The court likened the standard of review to a fenced pasture within which the trial court has discretion to roam:

To the extent that a trial judge's pasture [of available discretion] is small because he or she is fenced in closely by the appellate courts and given little room to roam in applying a stated legal principle to facts, the operative standard of review approximates what can be described as "de novo." That is, the appellate court closely and regularly redetermines the legal effect of

specific facts. But to the extent that the pasture is large, the trial judge has considerable freedom in applying a legal principle to the facts, freedom to make decisions which appellate judges might not make themselves ab initio but will not reverse—in effect, creating the freedom to be wrong without incurring reversal. Only when the trial judge crosses an existing fence or when the appellate court feels comfortable in more closely defining the law by fencing off a part of the pasture previously available does the trial judge's decision exceed the broad discretion granted.

*Id.* at 937–38. *Pena* was decided after our decisions in *Drobel* and *Bakalov.* *Tenney,* which we decided after *Pena,* did not review this issue. *See Tenney,* 913 P.2d at 753.

█ Therefore, we hold, under *Pena,* that a trial court's determination of whether a defendant has knowingly, intelligently, and voluntarily waived the right to counsel "is a determination of law and is reviewable non-deferentially for correctness, as opposed to being a fact determination reviewable for clear error." *Id.* at 939. We further hold that trial courts have a reasonable measure of discretion when applying this area of law to a given set of facts. *See id.; State v. Perry,* 899 P.2d 1232, 1236 (Utah App.1995). However, "a sufficiently careful review is necessary to assure that the purposes of the . . . requirement [that defendants' waivers of the right to counsel are knowing, intelligent, and voluntary] are served." *Id.* Here, as in *Pena,* a constitutionally protected right is at issue. However, also as in *Pena,* the reason our review is less than de novo is that the question of whether a defendant knowingly, intelligently, and voluntarily waives the right to counsel is "highly fact dependent, and the fact patterns are quite variable." *Id.* at 940; *see Drobel,* 815 P.2d at 733 (noting that in determining whether defendant has knowingly and intelligently waived right to counsel, we must consider total circumstances of individual case, including background, experience, and conduct of defendant).

### B. The Colloquy

█ Accordingly, because our decision turns upon "the particular facts and circumstances surrounding [the] case," *Drobel,* 815 P.2d at 732, we examine the record to determine whether defendant had sufficient information of the dangers and disadvantages of self-representation to be able to intelligently waive his right to counsel. *See Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541. The Utah Supreme Court explained in *Frampton* that a colloquy on the record between the court and the accused is the preferred way of determining whether the accused adequately waived the right to counsel because it insures the defendant understood the risks of self-representation, and it is the most efficient means to eliminate appeals. *Frampton,* 737 P.2d at 187. The trial court engaged in such a colloquy with defendant. Accordingly, we examine this colloquy to see if the trial court communicated the dangers and disadvantages of self-representation to defendant.

After the jury was impanelled at trial, just before opening arguments were to begin, defendant requested to speak with the trial court. The trial court invited defendant, defendant's lawyer, and the prosecutor into his chambers to discuss defendant's concerns. The following is an excerpt from their discussion:

THE COURT:.... Mr. McDonald?

[DEFENDANT]: Yes, your Honor. I don't feel that I'm being properly counseled or as a lawyer being, you know, as far as discussing the matter, because for a fact, number one, he did not get in touch with me any time during the week to even discuss or go over things. He just, you know, like I come to court now, just to go to trial, then he comes and says this and that, but we did not go over no battle plans or any such thing.

Then, two, the DA brings in coats and jackets that he did not prevail doing in my preliminary hearing, and that I am not getting proper counseling. My lawyer did not go over any kind of battle plans or get me prepared for this. He was going to make me a bargain, which I did not—I didn't want to take it. So he did not come and discuss no common battle plans to me. I am not prepared. I really think he is not prepared to go on in this case right now.

THE COURT: Mr. Albright.

MR. ALBRIGHT: Your Honor, I take a position opposite to that, and that puts me in an awkward situation, because I am here to represent him.

THE COURT: You need to represent what your efforts have been.

[Description of trial preparation given by Mr. Albright.]. . . .

THE COURT: Mr. McDonald?

[DEFENDANT]: Just like he said, he has been prepared, but he hasn't prepared me. I am the one that is going to have to go up and do a five to life.

THE COURT: I don't know what more preparation you would make, Mr. McDonald. Are you going to testify?

[DEFENDANT]: Yes, sir.

THE COURT: Well, then, you have a right to go over that and there is plenty of time to do that[.]

[DEFENDANT]: Do I have the right to go question, myself, the people that he puts on the stand?

THE COURT: You can act as your own attorney if you want to.

[DEFENDANT]: Okay[.]

MR. ALBRIGHT: I would be happy to sit there and advise him throughout the trial, your Honor, if he prefers to represent himself.

THE COURT: Do you prefer to represent yourself?

[DEFENDANT]: Yes, sir.

THE COURT: I will allow you to do that and make your questioning. You need to understand, however, that you will be required to abide by the same rules of evidence as any attorney would be. Have you been to court before?

[DEFENDANT]: Yes.

THE COURT: How many times have you been in court before? Have you been through a trial?

[DEFENDANT]: I have seen a trial before, yes, I have.

THE COURT: Have you personally been involved in one?

[DEFENDANT]: Yes.

THE COURT: Have you been there when questions were asked and responses were given?

[DEFENDANT]: Yes, your Honor.

THE COURT: You have some knowledge then of the rules of evidence?

[DEFENDANT]: Yes, sir.

THE COURT: And you know what's required in that regard?

[DEFENDANT]: Yes.

THE COURT: You realize that this is a serious case and that the evidence that would be presented is going to be critical in this matter?

[DEFENDANT]: Yes.

THE COURT: Knowing that, is it still your desire to proceed and act as your own attorney?

[DEFENDANT]: Yes.

THE COURT: How much education have you had, Mr. McDonald?

[DEFENDANT]: I graduated, your Honor.

THE COURT: From what?

[DEFENDANT]: From high school.

THE COURT: Have you had any college experience?

[DEFENDANT]: No, sir.

THE COURT: Do you read, write and understand the English language?

[DEFENDANT]: Yes.

THE COURT: And you appear to be very articulate, is that true?

[DEFENDANT]: Yes.

THE COURT: Well, you have a right to act as your own attorney, but I will ask Mr. Albright to be here.

[DEFENDANT]: Yes. I would like for him to be there.

THE COURT: Would you like him to make your opening argument for you?

[DEFENDANT]: Yes, sir.

THE COURT: All right. You can proceed and I will ask you to—you may ask questions or may ask him to ask them for you, however you feel most comfortable.

[DEFENDANT]: Okay.

THE COURT: But he will remain there and be there to assist you at any time.

[DEFENDANT]: Okay.

. . . .

THE COURT: You need to realize, Mr. McDonald, what they say evidence is doesn't necessarily mean what it is or what conclusion they are going to—the jury is drawing from it. They are going to have to prove beyond a reasonable doubt out there what they say. It makes no difference to me or to the jury. They have got to prove it.

[DEFENDANT]: Okay.

. . . .

THE COURT: The Court would find that this matter went to preliminary hearing, and that the defendant was represented by Mr. Albright at the preliminary hearing. All evidence has been disclosed through an open door policy at the County Attorney's Office, and there is no evidence which is not known to the defendant through his counsel. The Court would further find that defense counsel has met with the defendant on numerous occasions, has talked with family members and all others who have had information in this matter, and is fully prepared to go to trial today and is acting as adequate counsel, in fact, probably more than adequate under the law.

The Court would find that he is present and I will direct counsel to remain at counsel table with Mr. McDonald in the event he wishes to consult with him or have him participate in any part of the trial. Mr. McDonald has requested that he make the opening statement, and as the trial goes along, you can elect whether you want to cross-examine or you want Mr. Albright to, Mr. McDonald, but you both can't do it on a particular witness. If he starts out and there are other questions you want him to ask, you are welcome to convey those to him, but I won't let you cross-examine and then Mr. Albright cross-examine. See what I'm saying?

[DEFENDANT]: I understand, your Honor.

THE COURT: That's just to cut down stress on witnesses, really, and to keep order in the courtroom.

[DEFENDANT]: Okay.

THE COURT: All right. Are you ready to go? All right. Thank you.

## C. Application

In *Frampton*, as a guide for Utah courts, the court quoted a sixteen-point colloquy recommended to the federal courts for use when confronting a prospective pro se defendant. *See Frampton*, 737 P.2d at 187–88 n. 12 (quoting Bench Book for United States District Court Judges, vol. 1 §§ 1.02–2 to –5 (Federal Judicial Center, 3d ed.1986)). This inquiry is not mandatory, but does provide a helpful framework to assist trial courts in insuring the defendant understands the dangers and disadvantages of self-representation. *Drobel*, 815 P.2d at 732 n. 14.

> The federally recommended inquiry addresses: whether defendant has studied law; defendant's experience at self-representation; the charges and possible penalties faced; familiarity with, and the expectation of adherence to, procedural and evidentiary rules; a warning that the trial court will not direct or advise the defense; a recommendation against self-representation; and whether the choice of self-representation is voluntary. Finally, appointment of standby counsel should be considered.

*Id.* at 732. Therefore, the focus of the suggested colloquy is not on the defendant's technical knowledge of the law, which is irrelevant to the court's assessment. *See Faretta*, 422 U.S. at 836, 95 S.Ct. at 2541. Rather, the colloquy focuses on whether the defendant understands the traditional benefits of representation by counsel that he or she is giving up by choosing self-representation.

It is apparent from the trial court's colloquy with defendant that it did not expressly follow all the guidelines outlined in *Frampton*. If the trial court had expressly followed all the recommended guidelines, we would have no problem affirming, *see Frampton*, 737 P.2d at 187 (stating that colloquy on record insures defendants understand risks of self-representation), although we hasten to emphasize that these guidelines are only suggestions rather than mandatory requirements, *Drobel*, 815 P.2d at 732 n. 14. Because

the trial court did not expressly follow the guidelines outlined in *Frampton,* we examine the totality of the circumstances of the case as reflected in the record, with particular emphasis on the court's colloquy, to decide whether defendant understood the dangers and disadvantages of self-representation. Because the guidelines outlined in *Frampton* are designed to ensure the defendant will waive the right to counsel with sufficient understanding of the perils of proceeding pro se, we consider these guidelines in our examination of the record.

■ During the colloquy, the court did not expressly ask defendant if he had studied law; however, the court did inquire into defendant's educational experience, and defendant acknowledged he had a high school education with no college experience. The colloquy also establishes defendant could read, write, and understand English. Therefore, the trial court could reasonably conclude defendant had no formal legal education, but that defendant could read, write, and communicate in English.

The court also did not explain the charge and penalties defendant faced; however, it is apparent from the record that defendant understood this information. In both his colloquy with the trial court and in his opening argument, defendant acknowledged he was facing a felony charge with a possible penalty of "five to life." Defendant also explained to the jury during his closing argument, "these charges [are] very serious, these charges are real, these charges [are] reality." In addition, the trial court, in its colloquy with defendant, told defendant "this is a serious case."

Although the trial court did not specifically tell defendant he would have to abide by the rules of procedure, it did emphasize to defendant he would have to abide by the rules of evidence:

THE COURT: Do you prefer to represent yourself?

[DEFENDANT]: Yes, sir.

THE COURT: I will allow you to do that and make your questioning. *You need to understand, however, that you will be required to abide by the same rules of evidence as any attorney would be.* Have you been to court before?

[DEFENDANT]: Yes.

THE COURT: How many times have you been in court before? Have you been through a trial?

[DEFENDANT]: I have seen a trial before, yes, I have.

THE COURT: Have you personally been involved in one?

[DEFENDANT]: Yes.

THE COURT: Have you been there when questions were asked and responses were given?

[DEFENDANT]: Yes, your Honor.

THE COURT: You have some knowledge then of the rules of evidence?

[DEFENDANT]: Yes, sir.

THE COURT: And you know what's required in that regard?

[DEFENDANT]: Yes.

THE COURT: You realize that this is a serious case and that the evidence that would be presented is going to be critical in this matter?

[DEFENDANT]: Yes.

THE COURT: Knowing that, is it still your desire to proceed and act as your own attorney?

[DEFENDANT]: Yes.

(Emphasis added.) Therefore, the court's colloquy with defendant establishes defendant " 'was aware of the existence of technical rules and that presenting a defense is not just a matter of telling one's story.' " *Frampton,* 737 P.2d at 188 (quoting *Acrey,* 691 P.2d at 962). Defendant's performance in court and ability to question witnesses also reflect his understanding of the necessity to abide by technical rules during the trial.

In addition, the trial court did not inquire into defendant's experience at self-representation. However, the colloquy establishes defendant had been personally involved in and observed a trial before. The court also did not specifically ask defendant if his choice to proceed pro se was voluntary, but it did ask defendant if it was his "desire to proceed and act as [his] own attorney."

The court also did not specifically warn defendant that it would not advise or direct him in conducting his defense. However, defendant admitted in the colloquy that he had previously been involved in a trial and understood trials are conducted according to technical rules. Furthermore, the record reflects defendant's understanding that he was responsible for conducting his own defense. Defendant did not show that he expected the court to explain things to him and help him, even when defendant could not figure out how to admit an item of evidence. Moreover, it is very significant that the court appointed Mr. Albright, who it found to be prepared to represent defendant at the trial, and who defendant admitted was prepared to represent him, as defendant's standby counsel. Therefore, although defendant was not specifically told the court would not assist him during the trial, the court appointed Mr. Albright as standby counsel and made it clear to defendant that Mr. Albright would assist defendant during the trial whenever defendant asked.

Perhaps the most troubling of the *Frampton* guidelines the trial court omitted from its colloquy with defendant was a recommendation against proceeding pro se or advice "that it is generally advisable to have a lawyer who is skilled and trained in the law." *State v. Ruple*, 631 P.2d 874, 876 (Utah 1981). Of all the guidelines recommended in *Frampton*, the court's recommendation against self-representation probably best ensures the defendant will understand the dangers and disadvantages of self-representation. Therefore, we highly recommend that trial courts express such a warning to a potential pro se defendant. However, we hold that a recommendation by the court against self-representation is not necessary for a defendant to intelligently waive the right to counsel.

On the contrary, although the trial court did not recommend against self-representation in this case, we hold that defendant still intelligently waived his right to counsel. The record reveals defendant understood the dangers and disadvantages of proceeding pro se.

Defendant knew he faced a felony charge and understood he would be subject to a "five to life" penalty if he was found guilty, and the trial court warned defendant of the seriousness of the trial and the importance of the evidence that would be presented. *Cf. Frampton*, 737 P.2d at 189. Defendant had previously been involved in a trial and acknowledged that he understood he would have to abide by technical legal rules. The court's questions drew to defendant's attention his lack of advanced formal education, but also established defendant was not illiterate or entirely uneducated. *Cf. United States v. Williamson*, 806 F.2d 216, 220 (10th Cir.1986). Although the record reveals Mr. Albright did not actively assist defendant, defendant knew the trial court insisted upon standby counsel. At any time during the trial, including during closing arguments when the court insisted Mr. Albright stay to assist defendant, defendant could have asked for Mr. Albright's assistance. "The value of counsel should have been apparent to defendant." *Frampton*, 737 P.2d at 189; *cf. United States v. Willie*, 941 F.2d 1384, 1389 (10th Cir.1991), *cert. denied*, 502 U.S. 1106, 112 S.Ct. 1200, 117 L.Ed.2d 440 (1992); *Meyer v. Sargent*, 854 F.2d 1110, 1115 (8th Cir. 1988); *United States v. Hafen*, 726 F.2d 21, 25 (1st Cir.1984), *cert. denied*, 466 U.S. 962, 104 S.Ct. 2179, 80 L.Ed.2d 561. Mr. Albright's presence as standby counsel was a significant safeguard that offsets some of the colloquy's deficiencies.

Therefore, the colloquy, in conjunction with defendant's understanding as revealed by other parts of the record, sufficiently demonstrates that defendant understood the hazards of self-representation. *Cf. Ruple*, 631 P.2d at 876. Defendant was aware of the technical problems he might encounter in acting as his own attorney, knew that presenting a defense is not just a matter of telling one's own story, and understood the risks he took if his defense efforts were unsuccessful. *Cf. Frampton*, 737 P.2d at 188; *State v. Hamilton*, 732 P.2d 505, 507 (Utah 1987).[1]

---

1. A defendant's ability to conduct his or her defense is not significant in determining whether the right to counsel was adequately waived. *See*

*Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975) ("[A] defendant need not himself have the skill and experi-

Finally, we note that we reject defendant's claim that the trial court nudged him into making the decision to represent himself. We would indeed be concerned if we agreed with defendant's claim; however, defendant, not the trial court, first raised the issue of self-representation by asking if he could examine witnesses. The trial court merely translated defendant's request into legal terminology by asking defendant if he wanted to represent himself. Thus, the trial court simply clarified defendant's request and disclosed defendant's constitutional right to represent himself, without foreclosing defendant's other option of proceeding with counsel.[2]

## II. Interference with Right to Self-representation

Defendant argues the trial court also violated his constitutional right to self-representation by appointing his former trial counsel as standby counsel because defendant perceives a conflict of interest existed between him and his counsel. A short examination of the record reveals defendant waived this argument.

Defendant expressly stated during his colloquy with the trial court that he wanted Mr. Albright to remain with him as standby counsel:

> THE COURT: Well, you have a right to act as your own attorney, but I will ask Mr. Albright to be here.
>
> [DEFENDANT]: Yes. I would like for him to be there.
>
> . . . .

THE COURT: All right. You can proceed and I will ask you to—you may ask questions or may ask [Mr. Albright] to ask them for you, however you feel most comfortable.

> [DEFENDANT]: Okay.
>
> THE COURT: But he will remain there and be there to assist you at any time.
>
> [DEFENDANT]: Okay.

Not only did defendant tell the trial court he wanted Mr. Albright to remain with him as standby counsel, but he also initially said he wanted Mr. Albright to present his opening argument.

Consequently, because defendant not only agreed with the trial court's decision to have Mr. Albright remain as his standby counsel, but also expressly stated that he desired Mr. Albright's presence and assistance, defendant waived his claim that Mr. Albright's presence interfered with his right to self-representation.[3]

## CONCLUSION

Even though the trial court failed to make an ideal comprehensive formal inquiry into whether defendant made an intelligent waiver, we hold, based on our review of the record, that the trial court correctly determined defendant knowingly, intelligently, and voluntarily waived his right to counsel. In addition, because defendant expressly agreed to Mr. Albright's appointment as standby

ence of a lawyer in order competently and intelligently to chose self-representation....''). However, we note defendant conducted himself ably during the trial, as also noted by the trial court's comment to defendant: "Let me indicate, Mr. McDonald, I think you have done very well representing yourself." *Cf. State v. Tenney*, 913 P.2d 750, 754 (Utah App.1996).

**2.** Defendant also argues he should have had counsel other than Mr. Albright to advise him as to whether he should waive his right to counsel. This argument is without merit, so we decline to address it. *See State v. Carter*, 776 P.2d 886, 888–89 (Utah 1989).

**3.** Defendant argues the trial court had a duty to at least investigate defendant and Mr. Albright's relationship before appointing Mr. Albright as

defendant's standby counsel because, defendant claims, a conflict of interest existed between them. However, defendant has failed to point out to this court a legitimate conflict of interest that existed between defendant and Mr. Albright. In addition, we note that defendant has not even shown how Mr. Albright, who the record reveals was never actively involved in assisting defendant during trial, interfered with defendant's ability to represent himself. *See McKaskle v. Wiggins*, 465 U.S. 168, 177, 104 S.Ct. 944, 950, 79 L.Ed.2d 122 (1984) (holding that defendant's right to self-representation is only violated when standby counsel interferes with defendant's case such that defendant did not have "a fair chance to present his case in his own way").

counsel, we hold that defendant waived the claim that this appointment violated his right to self-representation.

Therefore, we affirm defendant's conviction.

ORME, P.J., and BILLINGS, J., we concur.