2001 UT App 228

**STATE of Utah, Plaintiff and Appellee,**

v.

**Rodger VANCLEAVE, Defendant and Appellant.**

**No. 980210–CA.**

Court of Appeals of Utah.

July 19, 2001.

Margaret P. Lindsay, Aldrich, Nelson, Weight & Esplin, Provo, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Joanne C. Slotnik, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before Judges BENCH, BILLINGS, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 Defendant Rodger Vancleave appeals from his convictions for possession of a clandestine drug lab, a first degree felony; possession of a dangerous weapon by a restricted person, a second degree felony; possession or use of drug paraphernalia in a drug free zone, a class A misdemeanor; carrying a loaded firearm in a motor vehi-

cle, a class B misdemeanor; and speeding, a class C misdemeanor. We affirm.

## BACKGROUND

¶ 2 The underlying facts of this matter are not in dispute. On March 17, 1997, Deputy David Knowles of the Utah County Sheriff's Office, while on routine traffic patrol, stopped defendant for speeding. During the stop, the deputy discovered that defendant was the subject of an outstanding felony warrant. Subsequently, the deputy arrested defendant and searched his vehicle. During the search, the deputy discovered the materials necessary to construct a methamphetamine lab, a fully loaded .357 magnum, a full box of .357 shells, a partially burnt marijuana cigarette, and broken glass covered with methamphetamine residue. As a result, defendant was charged with possession of a clandestine drug lab and six other drug and firearm related crimes.

¶ 3 On April 14, 1997, the trial court appointed Mr. Steve Killpack to represent defendant. On April 21, June 12, and August 18, defendant petitioned the trial court to remove Mr. Killpack.[1] The trial court denied each of defendant's motions and on each occasion asked defendant if he would prefer to represent himself. Each time, after a brief dialogue with the court, defendant chose to retain Mr. Killpack as counsel. However, defendant consistently maintained that Mr. Killpack's refusal to follow his instructions, as well as his refusal to file certain motions, amounted to Mr. Killpack's failure to fully represent defendant. Defendant also submitted several pro se motions[2] without consulting Mr. Killpack, despite the trial courts instruction that all motions and argument should flow through Mr. Killpack.

¶ 4 Finally, on the morning of defendant's trial, and following defendant's repeated refusal to comply with the court's instructions, the trial court asked defendant to choose between representing himself or accepting the representation of Mr. Killpack. Following

---

1. Defendant's initial request arose from his asserted desire to engage private defense counsel. All of defendant's subsequent motions to remove Mr. Killpack included requests for substitute appointed counsel and were predicated on defendant's claim that Mr. Killpack was not representing defendant's interests.

2. The trial court denied each of defendant's pro se motions.

a brief exchange with the court, defendant chose to represent himself. The trial court cautioned defendant as to the wisdom of this choice; however, the trial court accepted defendant's decision and retained Mr. Killpack in an advisory role. Ultimately, the jury convicted defendant of five of the seven charges. He now appeals.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 5 Defendant's sole argument on appeal is that he did not intelligently and voluntarily waive his right to counsel at trial. "[T]he question of whether a defendant knowingly, intelligently, and voluntarily waives the right to counsel is 'highly fact dependant, and the fact patterns are quite variable.'" *State v. McDonald,* 922 P.2d 776, 781 (Utah Ct.App.1996) (citation omitted). However, the right to counsel is constitutionally protected, *see id.,* therefore, "[w]hether a waiver of counsel was made knowingly and intelligently is a mixed question of law and fact." *State v. Heaton,* 958 P.2d 911, 914 (Utah 1998). Thus, we review the trial court's factual findings for clear error, and its legal conclusions for correctness. *See State v. Tenney,* 913 P.2d 750, 753 (Utah Ct.App.1996).

## ANALYSIS

¶ 6 Under these circumstances, we must first examine whether the trial court properly discharged its duty to inquire following defendant's motions to remove Mr. Killpack. *See State v. Valencia,* 2001 UT App 159, ¶ 13, 421 Utah Adv. Rep. 11. We then must determine whether the trial court properly determined that good cause did not exist to require the appointment of substitute counsel. *See id.* at ¶ 14, 27 P.3d 573. Finally, we examine whether defendant properly waived his right to counsel. *See id.* at ¶ 19, 27 P.3d 573.

### I. The Trial Court's Duty to Inquire

■ ¶ 7 "[T]he trial court has a duty to 'make some reasonable, non-suggestive efforts to determine the nature of [a] defendant's complaints' before deciding whether good cause [to appoint] substitute counsel exists." *Id.* at ¶ 13, 27 P.3d 573 (citation omitted). In the instant case, defendant petitioned the court to remove Mr. Killpack on at least three separate occasions: once expressing an interest in retaining counsel from out-of-state, and thereafter expressing his dissatisfaction with Mr. Killpack's services.

■ ¶ 8 The trial court, in an effort to fully investigate defendant's claims, asked defendant to explain the reasons underlying his dissatisfaction, thereby attempting to explore the substance of defendant's complaint before denying his request. *See State v. Vessey,* 967 P.2d 960, 962–64 (Utah Ct.App. 1998). Additionally, the trial court explained to defendant that if he could show a true conflict of interest existed with Mr. Killpack, defendant would then be entitled to substitute appointed counsel. Accordingly, while the trial court's inquiry is not a model of clarity, we conclude that the trial court sufficiently discharged its duty to inquire.

### II. Good Cause for Substitute Counsel

¶ 9 Next, we would normally determine whether defendant presented the trial court with sufficient information to establish the good cause necessary to trigger the appointment of substitute counsel. *See Valencia,* 2001 UT App 159 at ¶ 14, 27 P.3d 573. "It is well established that to warrant substitution of counsel, a defendant 'must show good cause, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict.'" *State v. Lovell,* 1999 UT 40, ¶ 31, 984 P.2d 382 (quoting *United States v. Young,* 482 F.2d 993, 995 (5th Cir. 1973) (citation omitted)). However, defendant does not challenge the trial court's denial of his motion for substitute counsel; therefore, we assume that the trial court's determination was correct. *See State v. Rodriguez,* 841 P.2d 1228, 1229 (Utah Ct.App.1992)(holding that, "[i]n general, if a defendant has not raised an issue on appeal, we may not consider the issue sua sponte"). Accordingly, we are left to examine whether defendant properly waived his right to counsel.

## III. Waiver of the Sixth Amendment Right to Counsel

¶ 10 The Sixth Amendment guarantees both a defendant's right to representation by counsel, including the right to appointed counsel, and the right to proceed pro se. *See State v. Heaton,* 958 P.2d 911, 917. When faced with a defendant who is unwilling to "proceed to trial with appointed counsel or insists on proceeding pro se," a trial court must balance the defendant's right to counsel with his right to represent himself. *Id.* However, a trial court also "must honor a defendant's choice of self-representation unless the court finds that the [defendant's] waiver was not [made] knowing[ly], intelligent[ly,] and voluntary[ly]." *State v. McDonald,* 922 P.2d 776, 779 (internal citations omitted). Therefore,

> we have recommended that trial court[s] conduct an on-the-record colloquy with the accused [during] which the court should fully inform the accused "of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open."

*State v. Bakalov,* 1999 UT 45, ¶ 23, 979 P.2d 799 (quoting *State v. Frampton,* 737 P.2d 183, 187 (Utah 1987)). "[I]n the absence of such a colloquy, this court will look at the record and make a de novo determination regarding the validity of the defendant's waiver only in extraordinary circumstances." *Heaton,* 958 P.2d at 918.

¶ 11 In the present matter, defendant concedes that a colloquy took place. Thus, we are left to determine whether defendant's waiver of counsel was made both intelligently and voluntarily.[3]

¶ 12 Defendant first argues that his waiver was not voluntary because the trial court refused to appoint substitute counsel. In the context of a defendant's decision to waive the right to counsel, we have defined voluntary to mean " 'free from official coercion, even if not free from the influence of a mental disor-

der.' " *McDonald,* 922 P.2d at 779 (quoting *State v. Drobel,* 815 P.2d 724, 732 n. 11 (Utah Ct.App.1991)). Moreover, as our supreme court stated in *Bakalov,* " ' "[a] defendant may be asked, in the interest of orderly procedures, to choose between waiver [of counsel] and another course of action as long as the choice presented to him is not constitutionally offensive." ' " *Bakalov,* 1999 UT 45 at ¶ 17, 979 P.2d 799 (alteration in original) (quoting *Frampton,* 737 P.2d at 187 (quoting *United States v. Davis,* 604 F.2d 474, 485 (7th Cir.1979))).

¶ 13 Defendant's fundamental argument is that, in forcing him to choose between Mr. Killpack's representation or representing himself, the trial court forced him to waive his right to counsel. We disagree. In *Bakalov,* the Utah Supreme Court addressed a similar argument. There, the trial court assigned the defendant a competent, conflict-free counsel with whom defendant refused to cooperate. *See id.* at ¶ 18, 979 P.2d 799. The defendant demanded that counsel "strictly follow tactics dictated" by him, and, after counsel refused, the defendant repeatedly demanded that the trial court assign substitute counsel.[4] *Id.* As a result, the trial court "presented defendant with the choice of either accepting representation" from appointed counsel or proceeding pro se. *Id.* at ¶ 19, 979 P.2d 799.

¶ 14 On appeal, the supreme court explained that so long as no good cause exists to justify a change in attorneys, a defendant is " 'not entitled to pick and choose' his court-appointed counsel 'by either the process of an affirmative demand or the selective elimination of other attorneys.' " *Id.* at ¶ 20, 979 P.2d 799. The court determined that Bakalov had failed to demonstrate the good cause required to trigger the right to substitute appointed counsel, therefore, the trial court was not required to appoint substitute counsel. *See id.* Accordingly, the court concluded "the options offered defendant[,proceeding pro se or accepting the representation of

---

3. Defendant does not argue that he unknowingly waived the right to counsel; therefore, we do not address this requirement.

4. Bakalov insisted that appointed counsel enter into no discussions concerning possible plea agreements, and in fact, have no contact with the district attorney prosecuting the case. *See Bakalov,* 1999 UT 45 at ¶ 18, 979 P.2d 799.

appointed counsel,] were constitutionally permissible." *Id.* at ¶ 19, 979 P.2d 799.

¶ 15 Here, the trial court assigned Mr. Killpack to represent defendant throughout the proceedings.[5] However, from the outset, defendant refused to cooperate with Mr. Killpack, attempted to force Mr. Killpack to adopt defendant's tactics, and repeatedly insisted that the trial court appoint substitute counsel more amenable to defendant's demands. The trial court, after explaining what circumstances would trigger defendant's right to substitute counsel, denied each of his motions. Defendant, however, continued to demand the removal of Mr. Killpack. Finally, on the morning of trial, following a review of yet another series of pro se motions, the trial court presented defendant with two options: (1) accept Mr. Killpack as his attorney of record, or (2) represent himself.

¶ 16 While it is clear that "[a] defendant cannot be forced to proceed with incompetent counsel or counsel having a conflict of interests," *Bakalov*, 1999 UT 45 at ¶ 20, 979 P.2d 799, defendant has failed to "contest [either] the qualifications or impartiality" of Mr. Killpack. *Id.* Defendant instead argues that the trial court failed to ask defendant whether his waiver was voluntary, thus coercing his waiver. However, whether or not the trial court asked defendant if his choice was voluntary is not the critical issue, rather we concentrate on whether the trial court presented defendant with constitutionally permissible options. Here, defendant refused to cooperate with Mr. Killpack and continually demanded that the trial court appoint substitute counsel. Upon review, we agree with the trial court's determination

that defendant failed to demonstrate the good cause required to trigger his right to substitute appointed counsel. Thus, the trial court properly denied defendant's request for substitute appointed counsel, and consequently the trial court did not err in presenting defendant with the choice of retaining competent, conflict-free counsel or self-representation. Accordingly, we conclude that defendant's waiver of counsel was voluntary and free from official coercion.

¶ 17 Defendant next argues that he did not intelligently waive his right to counsel because the trial court failed to fully inform him of the risks associated with self-representation.[6] When a defendant voices a desire to waive his right to counsel, a trial court must;

> (1) advise the defendant of his constitutional right to the assistance of counsel, as well as his constitutional right to represent himself; (2) ascertain that the defendant possesses the intelligence and capacity to understand and appreciate the consequences of the decision to represent himself, including the expectation that the defendant will comply with the technical rules and the recognition that presenting a defense is not just a matter of telling one's story; and (3) ascertain that the defendant comprehends the nature of the charges and proceedings, and any additional facts necessary to a broad understanding of the case.

*Heaton*, 958 P.2d at 918.[7] Further, " '[t]he ultimate test is not the trial court's express advice, but rather the defendant's understanding.' " *McDonald*, 922 P.2d at 779 (quoting *Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1065 (11th Cir.1986)). Therefore, we

---

**5.** Because defendant does not appeal the trial court's denial of his motions to remove Mr. Killpack and does not allege that Mr. Killpack's representation was at any time ineffective, we assume that Mr. Killpack was both competent and conflict free.

**6.** " 'Intelligent' in this context means 'only that the defendant has been provided with adequate information on which to make his or her self-representation choice. Because such a choice is seldom, if ever, a wise one, "intelligent" does not carry that meaning here.' " *State v. McDonald*, 922 P.2d 776, 779 (Utah Ct.App.1996)(quoting

*State v. Drobel*, 815 P.2d 724, 732 n. 11 (Utah Ct.App.1991)).

**7.** The supreme court has strongly recommended that trial courts address these elements using the colloquy set forth in *State v. Frampton*, 737 P.2d 183, 187 n. 12 (Utah 1987). *See Bakalov*, 1999 UT 45 at ¶¶ 23–24, 979 P.2d 799; *Heaton*, 958 P.2d at 918 n. 5; *see also McDonald*, 922 P.2d at 783 (wherein the Utah Court of Appeals makes a similar recommendation). However, we have yet to require courts to strictly adhere to this form, and decline to do so now.

examine the record to determine if defendant fully understood the implications of his decision, and thus, made his choice with his eyes open. *See Bakalov*, 1999 UT 45 at ¶ 23, 979 P.2d 799.

¶ 18 First, on April 21, 1997, while discussing defendant's difficulty with Mr. Killpack, the trial court informed defendant that[8]

> it is your right to counsel we're dealing with, and if you either want to waive that right and proceed on your own today, or if you want to have another attorney, then I'm going to have to decide whether or not we'll interrupt this proceeding at this point.

The trial court then added, "if you want to waive your right to counsel, I can let you do that." In response, defendant stated clearly and unambiguously, "No, sir, I do not wish to waive my right." Accordingly, we conclude that the trial court adequately informed defendant of his rights relative to counsel, and that defendant clearly understood those rights.

¶ 19 The trial court also repeatedly explored with defendant the nature of the charges against him and the possible penalties defendant faced. For example, on April 21, 1997, the following dialogue occurred:

> THE COURT: I sense you don't understand what we're doing, and it concerns me.
>
> MR. VANCLEAVE: I do understand what we're doing, and I'm concerned whether I'm going to spend five to life in the State prison on a presumption.

Then, on June 12, 1997, the trial court had the following exchange with defendant:

> MR. VANCLEAVE: I'm fixing to go on trial for five to life, and I don't even have a defense.
>
> THE COURT: It's my understanding, Mr. Ro[d]ger VanCleave, at each and every stage of these proceedings I have attempted to appoint counsel for you, advising you that count I is a first degree felony, Count II is a first degree felony, Count III is a second degree felony, possession of a dangerous weapon by a restricted person. Count IV is possession or use of marijuana, a class A misdemeanor. Count V is a class A misdemeanor, Count VI is a loaded firearm in [motor] vehicle, a class B misdemeanor. Count VII is a misdemeanor, and that there's a motion to (inaudible) involved, and at each and every stage of these proceedings I have indicated to you, "You need counsel."
>
> MR. VANCLEAVE: Correct.
>
> THE COURT: And [on] each and every occasion, as I recall, you've simply complained about everything, and refused to have counsel and have represented yourself.
>
> . . . .
>
> THE COURT: I have appointed Mr. Steven Killpack as advisory counsel for you with the anticipation that you may ask him questions and procedural questions, but on these first degree felonies where you could spend the rest of your life in prison, Mr. VanCleave, my understanding was is [sic] that you don't trust legal counsel, you don't like legal counsel, and you're going to represent yourself.
>
> MR. VANCLEAVE: That's not true, your Honor.

¶ 20 Based on these exchanges, we have no difficulty concluding not only that defendant had a broad understanding of the court proceedings, the State's case, and the nature of the charges against him, but also that the trial court adequately explored this information to ensure defendant's understanding.

¶ 21 Finally, we must determine if the trial court "ascertain[ed] that the defendant possess[ed] the intelligence and capacity to understand and appreciate the consequences of the decision to represent himself, including the expectation that the defendant will comply with the technical rules and the

---

8. The trial court entered into similar conversations with defendant on several subsequent occasions.

recognition that presenting a defense is not just a matter of telling one's story." *Heaton*, 958 P.2d at 918. Such a determination requires not only that the trial court conduct a thorough colloquy with defendant, but also that the court "carefully evaluate the accused's background, experience, and conduct insofar as they indicate what the accused understands in attempting to waive the right to counsel." *Bakalov*, 1999 UT 45 at ¶ 23, 979 P.2d 799.

¶ 22 Here, the trial court had ample opportunity to examine defendant's "background, experience and conduct" as indicators of his understanding concerning his right to waive counsel. *Id.* First, the trial court was aware of defendant's familiarity with the criminal justice system, including his status as a convicted felon. Second, in filing an array of pro se motions without the benefit of counsel,[9] defendant demonstrated a well developed knowledge of the criminal justice system, including the Utah Rules of Evidence and the Utah Rules of Criminal Procedure.[10] Third, defendant argued his position before the court, which indicated that he possessed the "intelligence and capacity to understand" the right he eventually chose to waive. *Id.*

¶ 23 Finally, on August 18, 1997, the morning of defendant's trial, the trial court engaged defendant in the following exchange concerning the responsibilities of self-representation:

THE COURT: Now the next issue before the court—and I will direct this, sir—is whether or not you are representing yourself today with Stephen Killpack as advisory counsel, or whether he is the one that is going to conduct this trial and represent you and be an advocate for you and speak [on] your behalf and have opening argument [on] your behalf and cross-examine witnesses [on] your behalf. I will not allow both. I will allow you to make that election now, sir. You'll either represent yourself with Mr. Killpack being advisory counsel so you can ask him questions and ask him procedural questions, and consult him as often and frequently as you need during the course of the trial, or in the alternative he will represent you, and he will be the one that will be your advocate, speak [on] your behalf, make closing arguments [on] your behalf, and conduct the interrogation and cross-examination of witnesses. That is a critical issue before we proceed.

. . . .

MR. VANCLEAVE: I would like to represent myself, your Honor.

THE COURT: Very well. If you choose to represent yourself, you will represent yourself. You will be the only spokesman for the defense. Mr. Killpack will not have the opportunity then to cross examine witnesses. He will not have the ability to call witnesses. He will not have the ability to make opening statements or closing arguments to this jury. But I will give you leave, during the course of the trial, when necessary, to consult with him on procedural matters and for clarification of matters and for the exhaustion of questions and cross-examination of witnesses. He will be advisory and consultant to you, and you may proceed to represent yourself.

I don't recommend that. I've told you at all stages of this case that these are serious charges, and that I think your case is best served by having a seasoned expert, a seasoned advocate, a seasoned attorney such as Mr. Killpack to be your advocate in this case. That has been my recommendation at all stages. I don't depart from it now. But you have the right to represent yourself.

---

9. Included among the many pro se motions filed by defendant were a motion to suppress evidence, a motion to dismiss the charges, at least one discovery motion, and a motion requesting a bill of particulars.

10. Defendant's demonstrated knowledge, however, must be balanced with his statement to the trial court concerning his unfamiliarity with these rules.

¶ 24 This exchange clearly supports the State's position that the trial court explained the gravity of defendant's decision to defendant. It also clearly demonstrates that the trial court explained the responsibilities of presenting a defense to defendant, including a clear indication that presenting a defense requires more than merely telling one's own story. *See Heaton,* 958 P.2d at 918. Finally, the court's repeated reference to the procedural rules and its recommendation that defendant rely on Mr. Killpack for procedural questions supports the State's argument that defendant was informed of his duty to comply with the technical rules.

¶ 25 Therefore, we conclude that the trial court collected sufficient information about defendant's "background, experience and conduct" to determine that he was proceeding with his eyes open. *Bakalov,* 1999 UT 45 at ¶ 23, 979 P.2d 799. We also conclude that defendant understood the implications of waiving counsel, and therefore, the trial court properly determined that defendant intelligently waived his right to counsel.

## CONCLUSION

¶ 26 The trial court did not err in presenting defendant with the choice to proceed either pro se or with the assistance of appointed counsel. Therefore, defendant's waiver was not coerced, but was instead voluntary. We further conclude, based on defendant's background, demonstrated intelligence, and knowledge of the criminal justice system, as well as the trial court's ongoing colloquy with defendant, that defendant intelligently waived his right to counsel.

¶ 27 Accordingly, we affirm defendant's convictions.

¶ 28 WE CONCUR: RUSSELL W. BENCH, Judge, and JUDITH M. BILLINGS, Judge.