2001 UT App 159

**STATE of Utah, Plaintiff and Appellee,**

v.

**Steven VALENCIA, Defendant and Appellant.**

No. 20000260–CA.

Court of Appeals of Utah.

May 17, 2001.

Maurice Richards, Public defender Ass'n, Ogden, for Defendant and Appellant.

Mark L. Shurtleff and Jeanne B. Inouye, Asst. Atty. Gen., Salt Lake City, for Plaintiff and Appellee.

Before GREENWOOD, P.J., and BENCH and ORME, JJ.

## OPINION

BENCH, Judge:

¶1 Defendant Steven Valencia appeals from his conviction for retail theft, a third degree felony. Valencia argues that the trial court violated his Sixth Amendment right to counsel by refusing to appoint substitute counsel and by requiring him to proceed pro se. We reverse and remand.

## BACKGROUND

¶2 Valencia was charged with retail theft, a violation of Utah Code Ann. § 76-6-602 (1999). The charges arose from an incident at a jewelry store in Roy, Utah. Valencia and his wife were at the store dropping off a bracelet for repair. A store clerk noticed Valencia and his wife bending over an open display case and then heard a ring box snap shut. The clerk did not confront Valencia and his wife. After they left, however, the clerk confirmed that a ring was missing from the display case. A store surveillance video allegedly shows Valencia take the ring and give it to his wife, who then concealed the ring and left the store.

¶3 Valencia was arrested the following day when he returned to the jewelry store to pick up the bracelet that he had dropped off for repair. Valencia admitted in an interview with a police detective that he took the ring. Valencia's trial strategy, as stated in an affidavit by his appointed attorney, was to argue that he confessed to the crime only in an effort to protect his wife, who stole the ring. The State entered into a plea agreement with Valencia's wife in exchange for her testimony against Valencia.

¶4 At Valencia's initial court appearance, the trial court found him indigent and appointed Martin V. Gravis from the Weber County Public Defender Association to represent him. In a letter to the trial court, Valencia complained that Gravis was not "doing his job" and requested that the trial court appoint substitute counsel. Then, at a preliminary hearing, Valencia asked to proceed pro se, and Gravis requested that the court allow him to withdraw because Valencia would not cooperate with him. The trial court did not rule on either request at that time. At a subsequent hearing, Valencia was bound over for trial.

¶5 At a pretrial conference on July 8, 1999, Valencia again requested a different attorney. Among other things, Valencia asserted that there was a conflict of interest between himself and Gravis. Valencia claimed to have written a letter to the Utah State Bar complaining about Gravis. Valencia also claimed to have filed a lawsuit against the Weber County Public Defender Association. Gravis denied that notice of any lawsuit had been served and asserted that Valencia mentioned the lawsuit only after he learned that the prosecutor was not willing to cut a deal. Gravis did not address the alleged letter to the Utah State Bar.

¶6 After listening to Valencia's various complaints, the trial court denied Valencia's request for substitute counsel. The trial court expressed concern that a new attorney would not have time to adequately prepare for a trial scheduled to start in just two weeks, and the court was unwilling to postpone the trial to give a new attorney time to prepare. The trial court gave Valencia the option of keeping Gravis or proceeding pro se at trial. When Valencia again requested a new attorney, the trial court stated that Gravis would be in court at the beginning of the trial and Valencia could decide at that time whether he wished to keep Gravis or proceed pro se.

¶7 After various motions and a continuance to allow for an interlocutory appeal, Valencia's trial began on January 24, 2000. On the day of trial, Valencia filed a pro se "Motion to Terminate Legal Counsel and Request for Conflict Counsel to be Appointed." Valencia's supporting memorandum details various allegations in support of a conflict of interest claim. Among other things, Valencia again asserted that he was in the process of filing a complaint against Gravis with the Utah State Bar.

¶8 While arguing the merits of his motion, Valencia became angry and addressed Gravis in a derogatory and obscene manner. Gravis

immediately moved to withdraw. After the court admonished Valencia regarding his language, Valencia asserted that he wanted to proceed pro se. The trial court responded by telling Valencia that Gravis would represent him. Valencia again became angry and said, "No, he's not. He's not going to represent me. If I have to spit on him or punch him, that's going to happen, [be]cause I'm not going to let him represent me." Because of Valencia's threat, and Gravis's expressed concern that he could not properly represent Valencia if he constantly had to be on guard against being spit on or assaulted, the court allowed Gravis to withdraw. The trial court then required Valencia to proceed pro se. A jury found Valencia guilty of retail theft, and this appeal followed.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 We first consider whether the Sixth Amendment required the trial court to appoint substitute counsel. See U.S. Const. amend. VI; Utah Const. art. I, § 12. Issues of constitutional interpretation are questions of law, which we review for correctness. See State v. Maguire, 1999 UT App 45, ¶ 5, 975 P.2d 476.

¶ 10 Next, even if Valencia did not have a constitutional right to substitute counsel, the trial court could still appoint substitute counsel. See State v. Pursifell, 746 P.2d 270, 272 (Utah Ct.App.1987). We review this decision for abuse of discretion. See id.

¶ 11 Finally, we consider whether Valencia knowingly, intelligently, and voluntarily waived his right to counsel before proceeding pro se. See State v. McDonald, 922 P.2d 776, 779 (Utah Ct.App.1996). This issue presents a mixed question of law and fact, which we review for correctness, but with a "reasonable measure of discretion" given to the trial court's application of the facts to the law. Id. at 780–81.

## ANALYSIS

¶ 12 The Sixth Amendment of the United States Constitution and Article I, Section 12 of the Utah Constitution guarantee an indigent defendant the right to appointed counsel. See U.S. Const. amend. VI;

Utah Const. art. I, § 12; see also Gideon v. Wainwright, 372 U.S. 335, 344–45, 83 S.Ct. 792, 796–97, 9 L.Ed.2d 799 (1963); State v. McDonald, 922 P.2d 776, 779 (Utah Ct.App. 1996). An indigent defendant does not, however, "have a constitutional right to a lawyer other than the one appointed, absent good cause." State v. Pursifell, 746 P.2d 270, 272 (Utah Ct.App.1987) (citing United States v. Young, 482 F.2d 993, 995 (5th Cir.1973)). Good cause for substitute counsel includes " 'conflict of interest, a complete breakdown in communication[,] or an irreconcilable conflict which leads to an apparently unjust verdict.' " State v. Lovell, 1999 UT 40, ¶ 31, 984 P.2d 382 (quoting Young, 482 F.2d at 995). Even if good cause is not shown, the trial court may exercise its discretion to substitute counsel. See Pursifell, 746 P.2d at 272.

### I. Trial Court's Duty to Inquire

¶ 13 When a defendant expresses dissatisfaction with appointed counsel, the trial court has a duty to "make some reasonable, non-suggestive efforts to determine the nature of the defendant's complaints" before deciding whether good cause for substitute counsel exists or whether the court should exercise its discretion to substitute counsel. Id. at 273. In this case, Valencia expressed dissatisfaction with Gravis on at least four separate occasions. Valencia expressed a multitude of reasons why he was dissatisfied. The trial court asked very few questions to "explore the substantiality of [Valencia's] allegations" before denying his repeated requests for substitute counsel. State v. Vessey, 967 P.2d 960, 964 (Utah Ct.App.1998). While we recognize that Valencia's behavior put the trial court in a difficult position, the trial court erred in not conducting a more meaningful inquiry into his allegations. See id. at 962 (finding trial court's cursory treatment of defendant's allegations per se error).

### II. Good Cause for Substitute Counsel

¶ 14 Although the trial court erred by not adequately inquiring into Valencia's allegations, the error was harmless given the circumstances of this case. On appeal, Valencia abandoned all but four of his

allegations against Gravis.[1] *See Valcarce v. Fitzgerald,* 961 P.2d 305, 313 (Utah 1998) ("It is well established that an appellate court will decline to consider an argument that a party has failed to adequately brief."). The only good-cause allegations argued on appeal are: 1) Gravis disclosed confidential attorney-client information in open court; 2) Gravis did not comply with Valencia's requests to file various motions; 3) Gravis had not consulted with Valencia regarding the trial; and 4) "there was a conflict of interest based on the total and complete breakdown of communication between [Gravis] and [Valencia]." Although the trial court made little or no inquiry into these four allegations, the record is sufficient to support the trial court's determination that good cause did not exist for substitute counsel. *See Vessey,* 967 P.2d at 962–63 (stating that per se error does not warrant reversal until good cause for substitute counsel is actually established).

¶ 15 First, Valencia asserts that Gravis revealed confidential attorney-client matters in open court at the preliminary hearing. A review of the hearing transcript reveals that Gravis acted to protect the attorney-client privilege by objecting to certain testimony. Gravis's objections were overruled and the testimony was admitted. At no point did Gravis reveal any attorney-client information. Thus, Valencia's first allegation is without merit.

¶ 16 Second, Valencia complains that Gravis would not file discovery motions or a motion to suppress. With limited exceptions that do not apply here, the attorney has ultimate control over the means used to accomplish trial objectives. *See* ABA Standards for Criminal Justice: Defense Function, Part V, Standard 4–5.2(b) (3rd ed., 1991). Gravis was under no obligation to comply with Valencia's desires because motions are a means used to accomplish trial

objectives. *See id.* Thus, we find no merit in Valencia's second argument.

¶ 17 Third, Valencia alleges that Gravis did not consult with him regarding the trial. The record does not support Valencia's argument. While arguing on the day of his trial that he was not adequately consulted, Valencia admitted that he had spoken with Gravis just days before. Additionally, Gravis stated in an affidavit that he and Valencia had previously viewed both the store surveillance tape and Valencia's videotaped confession together and had developed a trial strategy. Furthermore, the relevant concern is adequate preparation, not the amount of contact. *See Pursifell,* 746 P.2d at 273–74 (stating "a single, face-to-face meeting before trial is not, in itself, indicative of a lack of preparation"). Gravis's affidavit reflects that he was adequately prepared for trial, the record contains no evidence that Gravis was less than fully prepared, and Valencia does not assert otherwise. Thus, we reject Valencia's third argument.

¶ 18 Finally, Valencia alleges that there was a conflict of interest based on a total and complete breakdown of communication. This allegation fails for the same reasons that Valencia's third allegation fails. Although Valencia may have disliked Gravis, the record shows that the two were communicating. Thus, we reject Valencia's final good-cause argument.[2]

### III. Waiver of Sixth Amendment Right to Counsel

¶ 19 Having concluded that the trial court did not commit reversible error in refusing to appoint substitute counsel, we next turn to the issue of whether Valencia waived his Sixth Amendment right to counsel. After determining that substitute counsel was not warranted, the trial court could require Valencia to choose between accepting representation from Gravis or proceeding pro

---

1. For instance, Valencia alleged both at the pretrial conference and at trial that he filed a complaint against Gravis with the Utah State Bar. The trial court did not inquire into this allegation, and Gravis did not dispute or even address the allegation. If true, the allegation may constitute a conflict of interest. However, this allegation was not pursued on appeal.

2. For essentially the same reasons, we also conclude that the trial court did not abuse its discretion in refusing to appoint substitute counsel. *See Pursifell,* 746 P.2d at 274 (finding defendant's insubstantial complaints did not warrant substitution of counsel).

se. *See United States v. Welty*, 674 F.2d 185, 188 (3rd Cir.1982). Valencia asked to proceed pro se on two separate occasions. Valencia first asked to proceed pro se at the preliminary hearing. Then, after the trial court refused to appoint a different attorney, Valencia again asked to proceed pro se on the day of his trial. The Sixth Amendment to the United States Constitution and Article I, Section 12 of the Utah Constitution guarantee the right to self-representation. *See* U.S. Const. amend. VI, Utah Const. art. I, § 12; *see also State v. McDonald*, 922 P.2d 776, 779 (Utah Ct.App.1996).

¶ 20 "When an accused invokes the right to self-representation, he or she necessarily waives the right to counsel." *McDonald*, 922 P.2d at 779. To safeguard the right to counsel, the trial court must ensure that the waiver is knowing, intelligent, and voluntary. *See id.* An intelligent waiver requires that a defendant be " 'made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.' " *Id.* (quoting *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975)) (internal quotation and citation omitted). "[A] colloquy on the record between the court and the accused is the preferred way of determining whether the accused adequately waived the right to counsel." *Id.* at 781.

¶ 21 At no time did the trial court engage in a colloquy to warn Valencia of the dangers of self-representation. At the preliminary hearing, the trial court, without a colloquy, declined to rule on Valencia's request. At trial, rather than engaging in a colloquy when Valencia asked to proceed pro se, the trial court provoked Valencia by telling him that Gravis would continue to represent him. Only at that point did Valencia threaten Gravis. Valencia's threat was immediately followed by Gravis's withdrawal. Valencia was then required to proceed pro se without a colloquy.

¶ 22 Where there is no colloquy, we "will look at any evidence in the record which shows a defendant's actual awareness of the risks of proceeding pro se." *State v.*

*Frampton*, 737 P.2d 183, 188 (Utah 1987). The record in this case contains no such evidence. To the contrary, Valencia complained during trial that he had never experienced a jury trial and did not know what he was doing. In the absence of a colloquy or any evidence showing Valencia was aware of the risks of self-representation, we conclude that Valencia did not make an intelligent waiver of his right to counsel. Thus, the trial court violated Valencia's Sixth Amendment right to counsel by requiring him to proceed pro se without first making sure Valencia was aware of the dangers of self-representation.

¶ 23 The State argues that a waiver of the right to counsel was not required because Valencia forfeited his right to counsel by threatening Gravis. We need not address this argument because Valencia threatened Gravis only after the trial court committed reversible error by failing to make Valencia aware of the dangers of proceeding pro se when he asserted his constitutionally protected right to represent himself.

## CONCLUSION

¶ 24 The trial court erred by not making an adequate inquiry into the reasons for Valencia's dissatisfaction with his appointed counsel. The error was harmless, however, because the record supports the trial court's determination that good cause did not exist for substitute counsel. Moreover, the trial court did not abuse its discretion in denying Valencia's request for substitute counsel. Valencia's Sixth Amendment right to counsel was violated because he was required to represent himself at trial without a knowing, intelligent, and voluntary waiver of his right to counsel.

¶ 25 We reverse and remand for a new trial.

¶ 26 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, GREGORY K. ORME, Judge.