2001 UT App 396

**STATE of Utah, Plaintiff and Appellee,**

v.

**Clay Hamilton PETTY, Defendant and Appellant.**

No. 20001038–CA.

Court of Appeals of Utah.

Dec. 13, 2001.

Happy Morgan, Moab, and Kristine M. Rogers, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Christopher D. Ballard, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before GREENWOOD, P.J., and BENCH and THORNE, Jr., JJ.

## OPINION

THORNE, Jr., Judge:

¶ 1 Defendant Clay Hamilton Petty appeals from his conviction for Possession of a Dangerous Weapon By a Restricted Person, a third degree felony, in violation of Utah Code Ann. § 76–10–503 (1999). We reverse and remand for a new trial.

## BACKGROUND

¶ 2 In August of 1999, Petty, a convicted felon, entered a pawn shop carrying a Norinco .45 caliber automatic handgun. He reportedly told the proprietor that he owned the handgun and that he desired to sell it to finance the purchase of a smaller gun, better suited to his wife's use. The owner agreed to pawn the gun provided Petty sign the pawn ticket acknowledging ownership and affix his thumb print. Petty complied and received two-hundred dollars.

¶ 3 Based on this transaction, Petty was charged with Possession of a Dangerous Weapon by a Restricted Person. The trial court assigned an attorney to represent him and Petty accepted the representation of appointed counsel at his initial appearance, his preliminary hearing, and his arraignment. However, during a scheduled appearance to reset the trial date, appointed counsel informed the court that Petty wished to represent himself, that he had represented himself in the past, and that counsel stood ready to act as standby counsel. The trial court then engaged Petty in a brief colloquy, following which the court granted his request to proceed pro se. Petty was subsequently convicted and sentenced to serve no more than five years at the Utah State Prison. He now appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 4 Defendant argues that his waiver of counsel was not knowingly or intelligently made, therefore, the trial court erred in permitting him to represent himself. "This issue presents a mixed question of law and fact, which we review for correctness, but with a 'reasonable measure of discretion' given to the trial court's application of the facts to the law." *State v. Valencia*, 2001 UT App

159, ¶ 11, 27 P.3d 573 (quoting *State v. McDonald*, 922 P.2d 776, 780–81 (Utah Ct.App. 1996)).[1]

## ANALYSIS

¶ 5 The essence of Petty's argument is that the trial court failed to ensure that his waiver of his right to counsel was knowing or intelligent.[2] The Sixth Amendment to the United States Constitution guarantees a defendant's right to representation throughout his or her criminal trial. *See State v. Heaton*, 958 P.2d 911, 917 (Utah 1998). This right encompasses an indigent defendant's right to appointed counsel, as well as the right to waive representation and proceed pro se. *See State v. Vancleave*, 2001 UT App 228, ¶ 10, 29 P.3d 680. Should a defendant voice a desire to waive representation and proceed pro se, a trial court must first determine whether the defendant is making his waiver knowingly, intelligently, and voluntarily, and if so, the court then has no alternative but to honor the defendant's decision. *See State v. McDonald*, 922 P.2d 776, 779 (Utah Ct.App.1996).

¶ 6 In making this determination, we require a trial court to conduct a colloquy on the record,[3] *see, e.g., State v. Bakalov*, 1999 UT 45, ¶ 23, 979 P.2d 799, and "advise the defendant of the dangers and disadvantages of self-representation 'so that the record will establish that "[the defendant] knows what he is doing and his choice is made with eyes open."'" *Heaton*, 958 P.2d at 918 (quoting *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975) (citation omitted)). At a minimum, during the colloquy the trial court must (1) inform the defendant of his constitutional right to counsel and his right to represent himself; (2) determine that the defendant has the "intelligence and capacity to understand and appreciate the consequences of the decision to represent himself"; and (3) make certain that the defendant "*comprehends the nature of the charges and proceedings, the range of permissible punishments*, and any additional facts essential to a broad understanding of the case." *Id.* (emphasis added). Moreover, on appeal our focus is not solely on the trial court's express advice, we must also examine whether the colloquy clearly establishes the defendant's level of understanding. *See McDonald*, 922 P.2d at 779 (citing *Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1065 (11th Cir.1986)).

¶ 7 In the instant case, after being made aware of Petty's desire to proceed pro se, the trial court engaged him in a limited colloquy. During this colloquy, the trial court inquired about Petty's education, his general understanding of the legal system, his knowledge of the Rules of Evidence and Procedure, and informed him that he had the right to counsel as well as the right to proceed pro se. The trial court also advised Petty against proceeding pro se and selected Petty's appointed counsel to act in a standby capacity. However, at no point during the colloquy did the trial court address whether Petty "'comprehend[ed] the nature of the charges and proceedings,'" or "'the range of permissible punishments.'" *Heaton*, 958 P.2d at 918 (quoting *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541 (citation omitted)).

1. Because our conclusion regarding this issue is dispositive, we do not address Petty's remaining two issues. Further, on remand Petty will be afforded an opportunity to preserve these issues, something he previously failed to do.

2. While Petty briefly asserts that he did not voluntarily waive his right to counsel, he fails to set forth even minimal argument supporting the assertion. Accordingly, we do not address this claim. *See Smith v. Smith*, 1999 UT App 370,- ¶¶ 8–9, 995 P.2d 14 (stating, "[a]ppellant bears the burden of demonstrating the validity of [his] points on appeal"), *cert. denied*, 4 P.3d 1289 (Utah 2000). Moreover, even a cursory review of the record undermines Petty's assertion. Petty specifically requested to represent himself and the trial court warned him that the choice was not a wise one. Moreover, nowhere in the record is there any indication of "official coercion" that would support his assertion. *State v. McDonald*, 922 P.2d 776, 779 (Utah Ct.App.1996) (defining voluntary to mean "'free from official coercion'" (quoting *State v. Drobel*, 815 P.2d 724, 732 n. 11 (Utah Ct.App.1991))).

3. Although strict adherence to the colloquy form set forth in *State v. Frampton*, 737 P.2d 183, 187 n. 12 (Utah 1987), is not required, we strongly recommend that trial courts follow it when faced with a defendant requesting to proceed pro se. *See State v. Vancleave*, 2001 UT App 228, ¶ 17 n. 7, 29 P.3d 680.

¶ 8 Our case law clearly requires a defendant's waiver of counsel to be knowing and intelligent. Moreover, it must be clear from the colloquy that the defendant understands the risks he faces in making the decision. *See id.; Frampton,* 737 P.2d at 187–88 & n. 12; *Vancleave,* 2001 UT App 228 at ¶ 17, 29 P.3d 680; *Valencia,* 2001 UT App 159 at ¶ 20, 27 P.3d 573. Accordingly, absent a discussion of the nature of the charges and the range of possible penalties Petty faced, we cannot say that Petty had a proper understanding of the " 'dangers and disadvantages of self-representation.' " *Heaton,* 958 P.2d at 918 (quoting *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541 (citation omitted)).

¶ 9 The State argues "the record demonstrates that defendant understood both the charge and the potential penalty he faced." [4] The State, however, misapprehends both the role of this court and the central importance of the colloquy in determining whether a defendant has validly waived his right to counsel. "[T]his court's proper role is to review the trial court's findings and conclusions and then determine whether the trial court correctly concluded that the defendant validly waived counsel." *Id.*

¶ 10 In the context of waiver of counsel, a trial court must "conduct a *thorough inquiry* of the defendant to fulfill its duty of insuring that the defendant's waiver of counsel is knowingly, intelligently, and voluntarily made." *Id.* (emphasis added). "[I]n the absence of such a colloquy, [we] will look at the record and make a de novo determination regarding the validity of the defendant's waiver only in extraordinary circumstances[.]" *Id.* [5]

¶ 11 Here, the trial court entered no findings of fact, leaving us to examine the bare colloquy to determine the level of defendant's understanding. After carefully examining the text of the colloquy, we can discern no indication of Petty's level of understanding concerning the nature of the charges against him, or the range of possible penalties he faced. Accordingly, in the absence of a complete colloquy, we conclude that Petty did not knowingly and intelligently waive his right to counsel.

### CONCLUSION

¶ 12 We conclude the trial court failed to ensure that Petty was fully informed of the risks involved when he made his choice to proceed pro se. Therefore, we reverse Petty's conviction and remand for a new trial.

¶ 13 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, RUSSELL W. BENCH, Judge.

---

4. The State also suggests that the "presence of standby counsel is a significant safeguard that may offset the deficiencies in the colloquy." However, our supreme court has previously discounted this position, stating a "court's cursory recommendation to [the defendant] to rely on defense counsel did not apprise [him] in any way of the constitutional significance of the right to counsel and the consequences of waiver." *State v. Heaton,* 958 P.2d 911, 919 (Utah 1998).

5. Admittedly, we have allowed the required colloquy to take place over a number of different encounters. *See Vancleave,* 2001 UT App 228 at ¶¶ 18–19, 29 P.3d 680. The State, however, does not argue that such a series of exchanges focused on the subject of waiver of counsel occurred here.