2004 UT App 94

Benjamin Frank LUCERO, Petitioner
and Appellant,

v.

Sheriff Aaron D. KENNARD, Chief Paul
Cunningham, Salt Lake County Jail,
and Murray City Justice Court, Respon-
dents and Appellees.

No. 20020984–CA.

Court of Appeals of Utah.

April 1, 2004.

Heather Brereton and Joan C. Watt, Salt Lake City, for Appellant.

Karl L. Hendrickson and Scott Daniels, Salt Lake City, for Appellees.

Before Judges GREENWOOD, JACKSON, and ORME.

## OPINION

GREENWOOD, Judge:

¶1 Benjamin Frank Lucero (Petitioner) appeals the district court's dismissal of his petition for post-conviction relief. He argues that while he was before the Murray City Justice Court (Justice Court), he was not properly advised of his constitutional right to counsel, and consequently did not knowingly and voluntarily waive his right to counsel before pleading guilty to driving under the influence of alcohol (DUI) in violation of Utah Code Annotated section 41-6-44 (Supp. 2003). Petitioner argues that the record in the Justice Court is insufficient to allow a determination of whether the required collo-

quy between the Justice Court and Petitioner occurred and that the trial court should not have considered evidence outside the record.

¶2 The Justice Court responds by first arguing that neither the district court nor this court has jurisdiction to hear this case because Petitioner failed to file a timely appeal to the district court for a trial de novo. The Justice Court further argues that if there is jurisdiction there was sufficient evidence on the record and through proffered and sworn testimony, for the district court to conclude that Petitioner was advised of his rights, and properly waived his right to counsel. We affirm the district court's decision, but on other grounds.

## BACKGROUND

¶3 Petitioner was charged in the Justice Court[1] with DUI, a class B misdemeanor, in violation of Utah Code Annotated section 41–6–44 (Supp.2003), and improper usage of lanes, a class C misdemeanor, in violation of Utah Code Annotated section 41–6–61 (1998). At a bench trial, Petitioner appeared pro se. After pleading guilty to DUI, the charge of improper usage of lanes was dismissed. On June 4, 2002, Petitioner was sentenced to a jail term of 180 days, ordered to pay a fine, and placed on probation for eighteen months. Petitioner did not file an appeal of his conviction to the district court within the thirty days required by law. See Utah Code Ann. § 78–5–120(1) (2002). However, on August 1, 2002, Petitioner filed, in the Third District Court, a Petition for Post–Conviction Relief or, in the alternative, Motion to Correct Illegally Imposed Sentence under Rules 65B and 65C of the Utah Rules of Civil Procedure. This petition sought an extraordinary writ granting his immediate release on the grounds that Petitioner was not represented by counsel, had not waived his right to counsel, and was sentenced in violation of the Sixth Amendment.

¶4 The Justice Court held a review hearing on September 10, 2002, where it suspended Petitioner's remaining jail sentence and released him from custody. Six days later, in the Third District Court, a hearing

took place on Petitioner's petition for post-conviction relief. At this hearing, rather than challenging his plea or conviction, Petitioner requested that his suspended sentence be vacated.

¶5 After testimony from Petitioner, proffered testimony of the Justice Court judge, and submission of affidavit testimony of two Justice Court clerks, the district court entered Findings of Fact and Conclusions of Law stating that Petitioner knowingly and voluntarily waived his right to be represented by counsel when he entered his plea. Petitioner filed a timely appeal to this court for review of the district court's order.

## ISSUES AND STANDARD OF REVIEW

¶6 Petitioner challenges the district court's dismissal of his petition for post-conviction relief, claiming the record was insufficient. The Justice Court asserts the district court lacked jurisdiction to consider the petition. In addition, the Justice Court argues the district court properly found no violation of Petitioner's Sixth Amendment rights. "We review an appeal from an order dismissing or denying a petition for post-conviction relief for correctness without deference to the lower court's conclusions of law." *Rudolph v. Galetka*, 2002 UT 7, ¶4, 43 P.3d 467.

## ANALYSIS

### I. Appellate Review of Justice Courts

¶7 We first discuss the Justice Court's argument that the district court lacked jurisdiction to hear the petition because Petitioner did not first appeal to the district court for a trial de novo. Rule 65C(g)(1) of the Utah Rules of Civil Procedure directs the district court, upon receiving a petition for post-conviction relief, to first review the petition to ensure that the claims have not been previously adjudicated, or that the claims are not frivolous. If the court finds that the petition is not properly raised, the court is required to summarily dismiss the claims. See Utah R. Civ. P. 65C(g)(1). Additionally, Utah Code Annotated section 78–35a–106(1)(c) (2002) precludes post-con-

---

1. Under Utah Code Annotated section 78–5–101 (2002), justice courts are courts "not of record."

viction relief when a claim "could have been but was not raised at trial or on appeal." *Id.* In *Hutchings v. State,* 2003 UT 52,¶ 14, 84 P.3d 1150, the Utah Supreme Court noted that rule 65C complements section 78–35a–106 and is "designed to balance the 'requirements of fairness and due process against the public's interest in the efficient adjudication . . . of post-conviction relief cases.' " *Id.* (quoting Utah R. Civ. P. 65C(g)(1)). Therefore, a district court has jurisdiction over a petition for post-conviction relief in order to determine its procedural correctness.

¶ 8 In this case, it is unclear from the record whether the district court conducted this preliminary review required by rule 65C. It is clear, however, that the district court did not summarily dismiss the petition under rule 65C, but held a hearing on the merits, received evidence, and entered its Findings of Fact and Conclusions of Law dismissing the petition.[2] As a result, the district court correctly assumed jurisdiction over Petitioner's petition. The remaining question is whether the district court should have summarily dismissed the petition for failure to comply with rule 65C and section 78–35a–106.

¶ 9 The Justice Court argues that Petitioner was required to pursue a direct appeal before seeking post-conviction relief.[3] The Utah Constitution provides: "In criminal prosecutions the accused shall have . . . the right to appeal in all cases." Utah Const. art. I, § 12. For criminal cases originating in justice courts, a defendant is provided an appeal through "a trial de novo in the district court." Utah Code Ann. § 78–5–120(1) (2002). In a trial de novo, the district court is "not acting in a typical appellate capacity." *State v. Hinson,* 966 P.2d 273, 276 (Utah Ct.App.1998). Because justice courts are not courts of record, "the 'appeal' does not in-

volve a review of the justice court proceedings." *Id.* at 275. Through a trial de novo in the district court, "the parties essentially get a fresh start," and the case is tried again as if it originated there. *Dean v. Henriod,* 1999 UT App 50,¶ 9, 975 P.2d 946 (quotations and citation omitted). The district court's judgment after trial de novo is final and may not be appealed either to this court or the Utah Supreme Court absent an issue regarding the constitutionality of a statute or ordinance. *See* Utah Code Ann. § 78–5–120(7); *Hinson,* 966 P.2d at 276. "[I]n Utah, . . . it is settled that the right to an 'appeal' from a court not of record is satisfied by provision for a trial de novo in a court of record." *City of Monticello v. Christensen,* 788 P.2d 513, 516 (Utah 1990).

¶ 10 In this case, after being sentenced, Petitioner chose not to appeal his plea or conviction to the district court for a trial de novo. It is clear, however, that a trial de novo would have remedied any constitutional defects suffered by Petitioner in the Justice Court. Instead, nearly two months after sentencing in the Justice Court, Petitioner filed his Petition for Post–Conviction Relief with the district court.

¶ 11 "A petition for post-conviction relief is a collateral attack on a conviction and sentence and is not a substitute for direct appellate review." *Rudolph v. Galetka,* 2002 UT 7,¶ 5, 43 P.3d 467. The Post–Conviction Remedies Act, Utah Code Annotated sections 78–35a–101 to –110 (2002), precludes post-conviction relief when a claim "could have been but was not raised at trial or on appeal." Utah Code Ann. § 78–35a–106(1)(c). The Utah Supreme Court has reiterated this prohibition, but with one exception. "[I]ssues that were not addressed on direct appeal but could have been raised may not be raised for the first time in a post-

---

**2.** The Justice Court likewise argues that this court does not have jurisdiction over this case. However, the court of appeals has jurisdiction to review a district court's denial of a petition for post-conviction relief pursuant to Utah Code Annotated section 78–2a–3(2)(f) (2002). *See also* Utah R. Civ. P. 65C(*o*).

**3.** Petitioner argues that because the Justice Court did not raise this issue before the district court, it is now barred because it would constitute an

alternative ground for affirmance not apparent on the record nor sustainable by the factual findings. *See State v. Topanotes,* 2003 UT 30,¶ 9, 76 P.3d 1159. However, "[j]urisdictional issues may be raised for the first time on appeal." *State In Interest of R.N.J.,* 908 P.2d 345, 347 (Utah Ct.App.1995). Moreover, Petitioner's argument is moot because we have determined the district court had jurisdiction.

conviction relief proceeding *absent unusual circumstances.*" *Rudolph,* 2002 UT 7, at ¶ 5, 43 P.3d 467 (emphasis added). The supreme court further defined unusual circumstances as those that "show that there was an obvious injustice or a substantial and prejudicial denial of a constitutional right." *Carter v. Galetka,* 2001 UT 96, ¶ 15, 44 P.3d 626 (quotations and citation omitted); *see also Webster v. Jones,* 587 P.2d 528, 530 (Utah 1978) (stating that exigent circumstances exist where there "has been such unfairness or failure to accord due process of law that it would be wholly unconscionable not to re-examine the conviction" (footnote omitted)).

■■■ ¶ 12 Petitioner argues that his inability to have the Justice Court's denial of counsel reviewed by the district court on a direct appeal is unique and presents "unusual circumstances" with an "obvious injustice or a substantial and prejudicial denial of a constitutional right" warranting review. *Carter,* 2001 UT 96 at ¶ 15, 44 P.3d 626 (quotations and citations omitted). However, we are not persuaded that Petitioner, in fact, suffered from an obvious injustice. To the contrary, the structure of Utah's justice court system ensures that when a defendant believes he or she has been deprived of a constitutional right by a justice court, that individual is entitled to a new trial in the district court. *See* Utah Code Ann. § 78–5–120(1) (2002); *Henriod,* 1999 UT App 50 at ¶ 9, 975 P.2d 946. Voluntarily eschewing the opportunity to remedy a constitutional violation through a trial de novo does not create unusual circumstances permitting a petition for post-conviction relief. By rejecting a trial de novo, Petitioner acceded to any undesired result of the Justice Court's sentence.[4] Therefore, we hold that Petitioner did not suffer a "substantial and prejudicial denial of a constitutional right," *Carter,* 2001 UT 96 at ¶ 15, 44 P.3d 626 (quotations and citations omitted), because he had the opportunity to remedy his alleged denial of counsel, and chose not to pursue that opportunity.[5] Because we conclude that the unusual circumstances exception does not apply in this case, Petitioner was precluded under Utah Code Annotated section 78–35a–106 from obtaining relief through a petition for post-conviction relief. Given our holding that the district court should have dismissed Petitioner's petition for post-conviction relief and our disposition of this case on that ground, we do not address the correctness of the trial court's findings and conclusions.

## CONCLUSION

¶ 13 Petitioner failed to file a timely appeal to the district court for a trial de novo. A trial de novo would have remedied any constitutional violations Petitioner may have suffered in the Justice Court. After obtaining counsel, or properly waiving his right to counsel, Petitioner could have either pleaded guilty again, or challenged the charges in a trial. Defendant has not demonstrated unusual circumstances consisting of "an obvious injustice or substantial prejudicial denial of a constitutional right." *Carter,* 2001 UT 96 at ¶ 15, 44 P.3d 626. Thus, he has not established an exception to the rule prohibiting post-conviction relief when the petitioner has not first sought relief by direct appeal. We accordingly affirm the result of the district court, but for the reasons explained above.

¶ 14 I CONCUR IN THE RESULT:
GREGORY K. ORME, Judge.

---

4. Through his post-conviction relief petition, Petitioner *does not challenge the Justice Court plea or conviction.* Instead, for reasons not apparent to this court, he seeks only a dismissal of the remaining suspended sentence.

5. The Justice Court also argues that Petitioner should be precluded from bringing a petition for post-conviction relief because he did not explain why he failed to take a direct appeal. In support of this argument, it cites *Summers v. Cook,* 759 P.2d 341, 343 (Utah Ct.App.1988), and *Wells v. Shulsen,* 747 P.2d 1043, 1044 (Utah 1987), where the courts held that in addition to showing an obvious injustice, the defendants were required to explain why they did not take a direct appeal. However, *Summers* and *Wells* were both decided prior to the enactment of the Post Conviction Remedies Act, Utah Code Annotated sections 78–35a–101 to –110 (2002), which does not require such an initial showing of why a direct appeal was not taken. We note that even though a defendant is not required to explain why he did not bring a direct appeal, such an explanation may be helpful in showing extraordinary circumstances.

JACKSON, Judge (dissenting):

¶ 15 I respectfully dissent from the majority's opinion.

## I. The District Court's Jurisdiction to Hear a Petition for Extraordinary Relief

¶ 16 It is unquestionably true that a defendant's right to appeal a justice court conviction to a district court for a trial de novo satisfies the various state and federal constitutional guarantees relating to due process and the right to appeal. *See, e.g., North v. Russell,* 427 U.S. 328, 337, 96 S.Ct. 2709, 2713, 49 L.Ed.2d 534 (1976); *City of Monticello v. Christensen,* 788 P.2d 513, 516 (Utah 1990). The question before us, however, is not one of constitutional propriety, but is instead a question of statutory interpretation. Specifically, the question of whether the district court had jurisdiction to hear Lucero's petition for post-conviction relief hinges upon our reconciliation of two different statutory provisions. The first is Utah Code Annotated section 78–5–120 (Supp.2002), which dictates the manner by which defendants can appeal justice court convictions. That section is entitled "Appeals from justice court," and provides that, "[i]n a criminal case, a defendant is entitled to a trial de novo in the district court." *Id.* § 78–5–120(1). The second is Utah Code Annotated section 78–35a–106 (1996), which establishes the means by which a defendant can petition for post-conviction relief under the Post–Conviction Remedies Act. *See generally* Utah Code Ann. §§ 78–35a–106 to –110 (1996). Section 78–35a–106(1) states that "[a] person is not eligible for relief under this chapter upon any ground that: (a) may still be raised on *direct appeal* or by a post-trial motion." (Emphasis added.) The question before us, then, is whether a trial de novo qualifies as a "direct appeal." *Id.* The majority concludes that it does, and therefore rules that Lucero's fail-

ure to file for a trial de novo precludes him from petitioning for post-conviction relief under the Post–Conviction Remedies Act. I disagree.

¶ 17 I first examine the meaning of the phrase "direct appeal." There is no provision in the Post–Conviction Remedies Act that specifically defines what constitutes a "direct appeal" for purposes of section 78–35a–106, nor is there a provision anywhere in the Utah Code defining that specific phrase for purposes of any other particular statutory scheme.[1] Accordingly, we must interpret the meaning of this phrase using the accepted rules of statutory interpretation. "When interpreting statutes, we determine the statute's meaning by first looking to the statute's plain language, and give effect to the plain language unless the language is ambiguous." *Dick Simon Trucking, Inc. v. Utah State Tax Comm'n,* 2004 UT 11, ¶ 17, 84 P.3d 1197. As I see it, a party receives a "direct appeal" when an appellate tribunal conducts a case-specific, *ruling-specific* review of the lower court proceedings. This understanding comports with the limited discussion that this phrase has received in various Utah courts. *See, e.g., Collins v. Sandy City Bd. of Adjustment,* 2002 UT 77, ¶¶ 18–19, 52 P.3d 1267 (referring to a "direct appeal" as a "direct review"); *see also State v. Hamilton,* 2003 UT 22, ¶ 25, 70 P.3d 111 (distinguishing "direct appeals" from collateral attacks). Accordingly, Utah courts have used the phrase "direct appeal" to refer to a variety of situations in which appellate tribunals undertook a case-specific, ruling-specific review of the proceedings below. *See, e.g., Hutchings v. State,* 2003 UT 52, ¶ 16, 84 P.3d 1150 (referring to an appellate review of a probation revocation as a "direct appeal"); *Thomas v. State,* 2002 UT 128, ¶ 6, 63 P.3d 672 (stating that such issues as the validity of a search warrant, the admissibility of a confession, and the correctness of a bindover order are reviewable on "direct appeal"); *Salazar v.*

---

1. Black's Law Dictionary defines a "direct appeal" as "[a]n appeal from a trial court's decision directly to the jurisdiction's highest court, thus bypassing review by an intermediate appellate court." *Black's Law Dictionary* 94 (7th ed. deluxe 1999). A review of the Utah cases, however, indicates that this strict definition is not followed by our courts. In *Pascual v. Carver,* for example, the Utah Supreme Court referred to the defendant's prior appeal, which had been heard in the Utah Court of Appeals, as a "direct appeal" of the conviction. 876 P.2d 364, 366 (Utah 1994). Similarly, in *State v. Lara,* we referred to an appeal of a bindover order that was heard in this court as a "direct appeal." 2003 UT App 318, ¶ 20, 79 P.3d 951.

*Utah State Prison*, 852 P.2d 988, 991 n. 6 (Utah 1993) (referring to an appellate review of a denial of a motion to withdraw a guilty plea as a "direct appeal"). Applied to the present case, a trial de novo would therefore only constitute a "direct appeal" of the justice court conviction if it provided the district court with the opportunity to conduct a case-specific, ruling-specific review of the justice court proceedings.

¶ 18 I now turn to the scope of review provided by a "trial de novo." In *Pledger v. Cox*, the Utah Supreme Court noted that "[t]he words 'de novo' . . . have at least two possible interpretations when applied to judicial review . . . : '(1) A complete retrial upon new evidence; and (2) a trial upon the record made before the lower tribunal.' " 626 P.2d 415, 416 (Utah 1981) (quoting *Denver & R.G.W.R. Co. v. Public Serv. Comm'n*, 98 Utah 431, 436, 100 P.2d 552 (1940)). Though "[t]he meaning of 'trial de novo' in each statute is obviously dictated by the wording and context of the statute in which it appears," *id.*, a trial de novo that is conducted following a defendant's justice court conviction follows the first definition—that of a "complete retrial upon new evidence." *Id.* This comports with the definition offered by Black's Law Dictionary, wherein "trial de novo" is defined as "[a] new trial on the entire case—that is, on both questions of fact and issues of law." *Black's Law Dictionary* 1512 (7th ed. deluxe 1999). Thus, "[b]ecause a justice of the peace court in this state is not a court of record, an appeal from that court is by way of a trial de novo in the district court, rather than a review of the justice's rulings." *Wisden v. District Ct.*, 694 P.2d 605, 606 (Utah 1984).

2. Given this construct, Utah courts have insisted that though a district court exercises its "appellate jurisdiction" when conducting a trial de novo, *State v. Hudecek*, 965 P.2d 1069, 1071 (Utah Ct.App.1998), the trials de novo that are held before the district courts must not be characterized in the same manner as a standard appeal which is held before the court of appeals or supreme court. In *State v. Hinson*, this court clearly drew this distinction, therein declaring that certain rules governing a case filed "[i]n a conventional appeal environment
. . . [have] no place in an appeal from a justice court judgment." 966 P.2d 273, 275–76 (Utah Ct.App.1998). Similarly, we emphasized in *Dean*

¶ 19 Because it acts "as if there had been no trial in the first instance," *Black's Law Dictionary* 1512 (7th ed. deluxe 1999), a district court conducting a trial de novo "is not confined to the record before the justice court and need not defer to the justice court's findings and determinations. The district court neither reverses nor affirms the judgment of the justice court, but renders a new, distinct, and independent judgment." *State v. Hinson*, 966 P.2d 273, 276 (Utah Ct.App.1998). When a district court conducts a trial de novo review of a justice court conviction, "the case [stands] precisely as it would have at that stage of the proceedings if it had begun in that court in the first instance." *Id.; accord Dean v. Henriod*, 1999 UT App 50,¶ 9 n. 1, 975 P.2d 946.[2]

¶ 20 When confronted with possible statutory conflicts that might preclude a defendant from seeking post-conviction relief, "any ambiguity that may exist . . . should be resolved in favor of a criminal defendant." *Smith v. Cook*, 803 P.2d 788, 791 (Utah 1990). Against this backdrop, I think that the majority's decision to deny Lucero post-conviction relief based on his failure to request a trial de novo is simply incorrect. Had Lucero requested a trial de novo, the district court would have been required to act as if "the proceedings had begun in that court in the first instance." *Hinson*, 966 P.2d at 276. As such, Lucero would not have had the opportunity to focus his "appeal" on the particular legal conclusions or factual findings of the justice court that he believed were erroneous. Lucero's trial de novo would not have been a framed, particularized proceeding that was directed at the review of specific

*v. Henriod* that there is a distinction between a "traditional appeal" and "an appeal from justice court." 1999 UT App 50,¶ 9 n. 1, 975 P.2d 946. Thus, when a district court conducts a trial de novo, the district court is "not acting in a typical appellate capacity." *Hinson*, 966 P.2d at 276. In a related context, the Utah Supreme Court has declared that, because a district court has the authority to make findings of fact in its trial de novo review of Industrial Commission decisions, the district court should be viewed "as an independent fact finder and not as an intermediate appellate court." *University of Utah v. Industrial Comm'n*, 736 P.2d 630, 633 (Utah 1987) (emphasis omitted).

alleged errors; instead, the district court conducting the trial de novo would have acted as a broad, general tribunal that would have examined the charges anew. Insofar as this avenue of appeal would simply not have given Lucero the opportunity to *directly* challenge any alleged errors below, I think it clear that the trial de novo cannot be regarded as a "direct appeal."[3]

¶ 21 As I see it, the plain language of the statutory scheme thus provides a defendant who has been convicted in a justice court proceeding with two separate avenues of relief. First, the defendant can exercise his statutory right to file for a trial de novo. The advantages of this course would be clear: though the defendant would not have the opportunity to have the trial court review any potential errors that occurred below, the defendant would have the opportunity under this fresh start to try and persuade a new finder of fact of his or her innocence. Should the defendant choose not to file for a trial de novo, however, the defendant is still allowed to petition a district court for post-conviction

relief under the Post–Conviction Remedies Act. In this hearing, the trial court would have the authority to directly review the proceedings in the justice court to determine whether any constitutional error occurred.[4] In this case, Lucero properly and validly chose the second option, and the trial court correctly determined that it did have jurisdiction to hear the merits of Lucero's petition for post-conviction relief. I would accordingly conclude that the majority's reversal of that threshold determination is in error.

## II. Lucero's Petition for Post Conviction Relief

¶ 22 Because of my conclusion that Lucero did have a right to petition for post-conviction relief, I think that we are obligated to review the district court's determination that Lucero's waiver of the right to counsel at the justice court proceeding was constitutionally valid. Having reviewed the record and the applicable law, I would conclude that Lucero did not validly waive his right to counsel and that the district court's denial of Lucero's

3. There is some confusion as to whether Murray City Justice Court's argument is predicated on Utah Code Annotated section 78–35a–106(1)(a) (1996) (precluding relief under the Post Conviction Remedies Act where the petition is based on a ground that "may still be raised on direct appeal") or whether it is instead predicated on Utah Code Annotated section 78–35a–106(1)(c) (1996) (precluding relief under the Post Conviction Remedies Act where the petition is based on a ground that "could have been but was not raised at trial or on appeal"). Though Murray City Justice Court's brief did not specify which of these subsections its argument was predicated on, the brief did directly discuss Utah Code Annotated section 78–35a–102(1) (1996), which states that relief is appropriate where a defendant has "exhausted all other legal remedies, including a *direct appeal.*" (Emphasis added.) Given this reference, and given the repeated references throughout the remainder of the brief to Lucero's failure to exercise his rights to a "direct appeal," I think it clear that any specific argument arising under Utah Code Annotated section 78–35a–106(1)(c) is not properly before us.

Even were we to consider the subtle differences embodied by section 78–35a–106(1)(c), however, I think that the result here would be the same. As discussed above, though the trial de novo is considered to be the form by which a defendant can "appeal" his or her justice court conviction, it is still nevertheless true that the district court conducting the trial de novo cannot consider any particular claims of error that

might have arisen below. Thus, insofar as the defendant in such circumstances cannot "raise" any issues in his "appeal," I think that the result under either section 78–35a–106(1)(a) or section 78–35a–106(1)(c) would be the same.

4. At oral argument, Murray City Justice Court argued that allowing defendants who are convicted in justice court to have two separate avenues of appellate relief is unnecessary and duplicative. This concern, however, is misplaced. Instead, I think that there is a certain degree of logic present in allowing a defendant to bypass the trial de novo stage and instead directly appeal for post-conviction relief. The financial costs and emotional tolls that are involved in having to prepare for and go through a trial de novo can be heavy. In situations where a defendant has suffered a clear constitutional wrong at the justice court level, it would seem patently unjust to require the defendant to pay for and endure a full trial before allowing the defendant any access to direct appellate review. Instead, I think that our statutory scheme is wise in allowing defendants in such situations to immediately petition a court for redress under the Post Conviction Remedies Act, while at the same time allowing defendants who are willing to proceed to trial the opportunity to pursue that course of action instead. Regardless, I again note that this appears to be the statutorily created system. Thus, I see no option but to conclude that, as presently constituted, the Utah Code does allow a defendant to choose between these two different forms of relief.

petition for post-conviction relief should accordingly be reversed.

¶ 23 "The right to have the assistance of counsel in a criminal trial is a fundamental constitutional right which must be jealously protected by the trial court." *State v. Heaton*, 958 P.2d 911, 917 (Utah 1998). "Because of the importance of the right to counsel and the heavy burden placed upon the trial court to protect this right, there is a presumption against waiver, and doubts concerning waiver must be resolved in the defendant's favor." *Id.* However, because the right to assistance of counsel is "personal in nature," *State v. Frampton*, 737 P.2d 183, 187 (Utah 1987), the right "may be waived by a competent accused if the waiver is 'knowingly and intelligently' made." *Id.* (citation omitted); *see also State v. Bakalov*, 849 P.2d 629, 633 (Utah Ct.App.1993). Further, the relevant Utah cases establish that there is a distinction between the "knowingly" and the "intelligently" prongs of the waiver test.

> "Intelligent" in this context means "only that the defendant has been provided with adequate information on which to make his or her self-representation choice. Because such a choice is seldom, if ever, a wise one, 'intelligent' does not carry that meaning here." "Knowing" refers to a defendant's competence to waive the right to counsel,

similar to a defendant's competence to stand trial. . . .

*State. v. McDonald*, 922 P.2d 776, 779 (Utah Ct.App.1996) (citations omitted).

¶ 24 Before determining that a defendant has knowingly and intelligently waived his or her right to counsel, a trial court has an affirmative duty to "conduct a thorough inquiry of the defendant" in order to ensure "that the defendant's waiver of counsel is knowingly, intelligently, and voluntarily made." *Heaton*, 958 P.2d at 918. Though a colloquy on the record is not required, *see State v. Valencia*, 2001 UT App 159, ¶¶ 20–22, 27 P.3d 573, it is "the preferred method of ascertaining the validity of a waiver because it insures that defendants understand the risks of self-representation." *Frampton*, 737 P.2d at 187. "Where there is no colloquy, [appellate courts] 'will look at any evidence in the record' " created in the district court in order to ascertain whether the district court has fulfilled its duty of inquiry. *Valencia*, 2001 UT App 159 at ¶ 22, 27 P.3d 573 (quoting *Frampton*, 737 P.2d at 188).[5]

¶ 25 In explaining the contours of this required inquiry, the United States Supreme Court has stated that the defendant "should be made aware of the dangers and disadvan-

---

5. In its brief and again at oral argument, counsel for Lucero asserted that, insofar as justice court proceedings are not conducted on the record, our review of this case should be limited to the information contained in the justice court docket or filings. The cases state, however, that an appellate court reviewing a waiver of that right must be able to look at " '*any evidence* in the record' " in order to determine whether the right was properly waived. *State v. Valencia*, 2001 UT App 159, ¶ 22, 27 P.3d 573 (emphasis added) (quoting *State v. Frampton*, 737 P.2d 183, 188 (Utah 1987)); *accord State v. Heaton*, 958 P.2d 911, 919 (Utah 1998); *State v. McDonald*, 922 P.2d 776, 780 (Utah Ct.App.1996).

Similarly, I also note my disagreement with Lucero's assertion that the trial court in this case should not have received testimony from witnesses in its efforts to ascertain whether the waiver proceedings at the justice court were constitutionally valid. In *State v. Gutierrez*, the defendant sought to challenge the application of a repeat offender DUI enhancement statute to his case, therein arguing that his prior convictions were each invalid. *See* 2003 UT App 95, ¶¶ 2–5, 68 P.3d 1035. As part of his challenge, the defendant argued that one of his prior guilty

pleas, entered at a justice court, had been involuntary. *See id.* at ¶ 9. In upholding the use of the justice court guilty plea by the trial court, we concluded that Gutierrez had failed to prove involuntariness. *See id.* at ¶ 12. Addressing Gutierrez's concerns about how he could have established such proof where the justice court keeps no official record, we noted that "Gutierrez could have produced testimony from those who were present regarding the taking of his plea, the court's docket sheet, or other affirmative evidence." *Id.* In spite of this clear holding, Lucero suggests that there is a distinction between the trial court's use of such testimony for purposes of sentence enhancement and for use when the trial court reviews a petition for post-conviction relief. I disagree with that attempted distinction. In both situations, the trial court is simply exercising its authority to review the lower proceedings in order to determine whether they were constitutionally valid. Given the important nature of this solemn responsibility, I see no reason why the trial court should be limited in its ability to inquire as to what occurred in the justice court proceedings. Accordingly, I would conclude that the trial court's use of testimony and extrinsic evidence in this case was proper.

tages of self-representation" prior to the trial court's acceptance of a waiver of the right to counsel. *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1974). In accordance with the United States Supreme Court's unquestioned authority over questions of federal constitutional law, Utah courts have long enforced the *Faretta* directive as part of the Sixth Amendment analysis. *See Heaton*, 958 P.2d at 918; *Frampton*, 737 P.2d at 188; *State v. Ruple*, 631 P.2d 874, 875–76 (Utah 1981); *State v. Dominguez*, 564 P.2d 768, 769–70 (Utah 1977); *State v. Petty*, 2001 UT App 396, ¶ 8, 38 P.3d 998; *Valencia*, 2001 UT App 159 at ¶ 22, 27 P.3d 573; *McDonald*, 922 P.2d at 779; *Bakalov*, 849 P.2d at 633.[6]

¶ 26 The proper scope of the *Faretta* directive was recently addressed by the United States Supreme Court in *Iowa v. Tovar*, 541 U.S. ——, ——, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004).[7] In *Tovar*, the defendant was arrested for operating a motor vehicle while under the influence of alcohol. *See id.* at ——, 124 S.Ct. at 1383. An intoxilyzer test administered the night of the defendant's arrest showed that he had a blood alcohol level that was well above the legal limit. *See id.* At his arraignment, the defendant informed the court that he wished to waive his right to counsel and that he wished to plead guilty. *See id.* at ——, 124 S.Ct. at 1384. The court accordingly conducted a plea colloquy in which the court explained that the defendant had the right to be represented at trial by an attorney who "could help [the defendant] select a jury, question and cross-examine the State's witnesses, present evidence, if any, in [his] behalf, and make arguments to the judge and jury on [his] behalf." *Id.* at —— — ——, 124 S.Ct. at 1384. (second and third alterations in original). After receiving this and other warnings, the defendant affirmed his wish to waive his right to counsel and to plead guilty. *See id.* at ——, 124 S.Ct. at 1385.

¶ 27 Several years later, the defendant was arrested for a third DUI offense, and accordingly sought to challenge his prior guilty plea as a means of avoiding a recidivist sentence enhancement. *See id.* at —— — ——, 124 S.Ct. at 1385–1386. After proceeding through the lower Iowa courts, the Iowa Supreme Court ruled that the original waiver was constitutionally invalid due to the fact that the defendant had not been informed of "the dangers of self-representation." *Id.* at ——, 124 S.Ct. at 1387 (quotations and citation omitted).

¶ 28 On appeal, however, the United States Supreme Court reversed. *See id.* at ——, 124 S.Ct. at 1390. In reversing, the Court held that "[t]he information a defendant must possess in order to make an intelligent election ... will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and *the stage of the proceeding*." *Id.* at ——, 124

---

**6.** Counsel for Murray City Justice Court points us to language in *McDonald*, wherein we stated that "a recommendation by the court against self-representation is not necessary for a defendant to intelligently waive the right to counsel." 922 P.2d at 785. Murray City Justice Court argues that this language obviates the duty of inquiry discussed above. I disagree. A careful reading of the precedent discussed above indicates that the trial court's specific duty here is to ensure that the defendant understands the *"dangers and disadvantages"* of self-representation. *Heaton*, 958 P.2d at 918 (emphasis added); *accord McDonald*, 922 P.2d at 779. Though subtle, there is a clear distinction between a rule requiring the court to inform a defendant of the dangers and disadvantages of self-representation and one requiring the court to take the further step of actually advising the defendant not to represent himself or herself. The former is simply a fulfillment of the court's duty to ensure that the defendant has the proper information; the latter would put the trial court into the role of advisor to the defendant, a role that would clearly be impermissible. As discussed below, a subsequent decision by the United States Supreme Court may indicate that a warning of the dangers and disadvantages of self-representation is not required at all stages of litigation. However, I would stress here that our statement in *McDonald* regarding the lack of a "recommendation" requirement does not remove the duty of inquiry from trial courts before accepting a counsel waiver at the trial setting.

**7.** Though *Tovar* was concededly decided after the events at issue here took place, it is a "long standing traditional rule ... that the law established by a court decision applies both prospectively and retrospectively, even when the decision overrules prior case law." *Carter v. Galetka*, 2001 UT 96, ¶ 26, 44 P.3d 626 (quotations and citations omitted).

S.Ct. at 1387 (emphasis added). While the *Faretta* directive is still required before a court accepts a waiver of counsel before trial, *see id.* at —— – ——, 124 S.Ct. at 1387–1388, "at the earlier stages of the criminal process, a less searching or formal colloquy may suffice." *Id.* at ——, 124 S.Ct. at 1388. Quoting prior precedent, the Court explained that "[w]e require less rigorous warnings pretrial . . . not because pretrial proceedings are 'less important' than trial, but because, at that stage, 'the full dangers and disadvantages of self-representation . . . are less substantial and more obvious to an accused than they are at trial.' " *Id.* at ——, 124 S.Ct. at 1388 (quotations and citations omitted).

¶ 29 Endorsing a "pragmatic approach to the waiver question," *id.* at ——, 124 S.Ct. at 1388 (quotations and citations omitted), the Court ultimately concluded that the inquiry must rest on "the particular facts and circumstances" of each case. *See id.* at ——, 124 S.Ct. at 1382. Analyzing the *Tovar* litigation, the Court concluded that there was not a "realistic" "prospect" that a "meritorious defense" would have existed for Tovar at trial or that the defendant could have pled "to a lesser charge." *Id.* at ——, 124 S.Ct. at 1390. Because "the admonitions at issue might confuse or mislead a defendant [in such a scenario] more than they would inform him," *id.,* the Court ultimately concluded that the lower court did not err by failing to inform Tovar of the dangers and disadvantages of self-representation.

¶ 30 Counsel for the Murray City Justice Court argues that *Tovar* mandates affirmance in the present case. I disagree with that proposition. While it may be true that *Tovar* will require a reexamination of our "dangers and disadvantages" jurisprudence, at least as applied to waivers at a plea hearing, the facts of the present case do not require such a reexamination here. As discussed above, the *Tovar* ruling was expressly predicated on the unquestioned evidence that Tovar would have had no "realistic" alternatives to pleading guilty. *Id.* at ——, 124 S.Ct. at 1390. Further, the trial court in *Tovar* did conduct an on-record colloquy in which the court advised Tovar of some of the advantages that having an attorney would

have offered. *See id.* at ——, 124 S.Ct. at 1384. In the present case, however, there is a complete absence of evidence from which we could similarly conclude that Lucero lacked a realistic prospect of success at trial or in negotiations with prosecutors. There is likewise no evidence that Lucero was informed by the justice court of any of the advantages of having counsel present at the hearing. Our supreme court has previously held that "there is a presumption against waiver." *Heaton,* 958 P.2d at 917. Given this presumption, I think that we are obligated to conclude that Lucero was not informed of how the right to counsel would have applied "in general in the circumstances," *Tovar,* —— U.S. at ——, 124 S.Ct. at 1389 (emphasis omitted), and that Lucero's waiver of the right to counsel was thus invalid. As such, I would reverse the district court's dismissal of Lucero's petition for post-conviction relief.